COMMONWEALTH *vs.* JAMES FARRELL. November 8, 1982. The defendant has been convicted of the April 24, 1980, robbery of a bank. On appeal, he questions the denial of his pretrial motion to suppress evidence obtained pursuant to two search warrants.

1. The defendant had standing to contest the validity of the warrant issued on May 1, 1980, authorizing the search of his girlfriend's residence. See *Jones* v. *United States,* 362 U.S. 257, 265-267 (1960); *Rakas* v. *Illinois,* 439 U.S. 128, 148-149 (1978).

2. The May 1, 1980, warrant was supported by an affidavit of Trooper Thomas J. O'Connor of the Massachusetts State police. Made on personal knowledge and reliable information, the affidavit recited the circumstances of the robbery and facts which led the police to believe that the defendant was one of the robbers, including a statement sworn to by "John Doe" before an assistant clerk magistrate of a District Court which asserted that "Doe" knew the defendant and that the defendant had told "Doe" that he (the defendant) had committed the robbery. The affidavit also described the defendant's activities and whereabouts shortly before and after the robbery. It further indicated that the trooper had arrested the defendant that night (May 1, 1980), and "[h]e was then living at the home of his girl friend," who was identified by name and specific address. The affidavit sought, and the warrant conferred, authority to search that residence for ten specifically identified items which included the handgun and other implements used in the robbery (ammunition, a stolen license plate and stolen automobile keys), the fruits of the crime (the money taken), and various items of clothing.

The defendant makes no attack on the "John Doe" feature of the affidavit, and we consider that aspect no further. He argues that the affidavit fails to set forth facts sufficient to provide probable cause to believe that the handgun and other items described in the warrant would be found in his girlfriend's apartment. This argument is grounded upon the claim that the statement in the affidavit that the defendant was "then living at the home of his girl friend" is "baldly conclusory" and insufficient because the statement is unsupported by underlying facts. We disagree.

The affidavit contains factual information of a highly incriminating nature sufficient to implicate the defendant in the commission of the robbery and the theft of the getaway car. It also indicates that the defendant had been recently paroled in Florida, where he had committed a robbery, that he had attempted to purchase a handgun in Springfield under an assumed name, that he had registered at a named motel and also at a Springfield hotel under an alias, and that shortly before the robbery he had left the hotel without checking out and had not been seen there since. When arrested at his girlfriend's apartment, he was carrying documents identifying him as "Richard D. Wiley." The facts in the affidavit would depict the defendant to any reasonable magistrate as a person without roots in the community who purposely sought to remain transient and who had gone to considerable lengths before and after the crime to evade identification. It is reasonable to conclude from the detailed nature of the information in the affidavit, that the affiant's statements were based upon intensive police investigation during the eight days following the robbery's commission. The magistrate could reasonably infer from this detailed picture that the defendant would most likely stay out of the motel and hotel where he was known to have stayed before the robbery and that he had taken up temporary residence in his girlfriend's apartment in which he had been found and arrested at night. Further, it could reasonably be inferred that as a robber the defendant would likely hide the implements and fruits of the crime in a secure place where he could easily regain possession of them, compare *United States* v. *Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979), and that his use of other premises under an assumed name was designed to throw the police off his trail. We agree with the judge that it would have been useful if the trooper had included in the affidavit the additional information that the defendant, at the time of his arrest, had his suitcase in the apartment, and that the suitcase had been taken, at the defendant's request, from the front bedroom. The omission of these facts, however, is not fatal, because a realistic study of the affidavit under pertinent standards, see *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965); *Commonwealth* v. *Stewart*, 358 Mass. 747, 751 (1971); *Commonwealth* v. *Martin*, 6 Mass. App. Ct. 624, 627 (1978), "leads us to conclude that, while it might have included more facts then known to the police, it justifies an inference that [the items identified] may have been in [his girlfriend's apartment], where the defendant resided.". *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330 (1980).

3. The second warrant, issued on May 2, 1980, authorized the search of a cleaning establishment for clothing of the defendant described in a ticket found in his jacket pursuant to the earlier search. The affidavit in support of this warrant expressly incorporated the information in the prior affidavit, supplemented by details of the results of the first search. The defendant's only objection is that "the information in the [second] affidavit was based upon the fruits of the poisonous tree." Since we identify

no deficiency in the first warrant, there clearly is no flaw, on the ground argued, in the second.

*Judgment affirmed.*

*Barry P. Wilson* for the defendant.

*Stephen R. Kaplan,* Assistant District Attorney, for the Commonwealth.