COMMONWEALTH *vs.* BONEY JACKSON. February 13, 1987. *Practice, Criminal,* Instructions to jury. *Search and Seizure,* Probable cause. *Probable Cause. Constitutional Law,* Search and seizure. *Identification.*

The defendant was identified from photographs as one of three persons who committed an armed robbery of the two victims as they were entering their parked car. Cash, gold chains, and gold charms were stolen. The other perpetrators were not identified. The defendant was said to have carried a sawed-off shotgun. The defendant did not testify. His mother testified that he lived with her and that he had been home sleeping at the time of the robbery. Although the point is disputed by the Commonwealth, we agree with the defendant that the jury could properly infer from the testimony of Detective McConkey that the police did not search or attempt to search the defendant's home for the shotgun, ammunition, or the stolen articles. No evidence was introduced that tended to corroborate the identification testimony; the Commonwealth's case would stand or fall on that testimony.

Defense counsel took the tack in closing argument that the identifications were unreliable by themselves and that the police were seriously remiss in not seeking corroborative evidence, particularly in not searching the home for instrumentalities or proceeds of the robbery. Absent such corroboration, counsel argued, the jury could not fail to have reasonable doubt; it was a case of poor police work. The assistant district attorney argued that the identifications were untainted by suggestiveness and were based on ample opportunity to see under reasonably good lighting conditions. He did not respond to the argument concerning bad police work.

The judge, although unasked, did address the point in his instructions to the jury: "In this case, the issue has been raised as to why the police did not search or seek permission to search the defendant's home for a weapon. I will instruct you that in order for the police to enter anyone's dwelling for the purpose of a search, they must have a quantum of information known as 'probable cause' to believe that the item sought is at that location. Strong reason to suspect that it is there is not enough; there must be a substantial basis for concluding that it is there. Given all of the information in the hands of the police at the time, it is for you to determine whether or not they acted reasonably under the circumstances." Defense counsel objected to that instruction on a multiplicity of grounds which collectively (but somewhat imprecisely) can be said to have alerted the judge to the point argued on appeal.

We think that the instruction, in the context of this case, tended to mislead the jury. It would have planted in their minds the notion that there was an overriding legal reason explaining the failure to search for corroborative evidence which defense counsel had tried to persuade the jury was attributable to sloppy investigation. The defense could properly advance the theme of deficiencies in the police investigation. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980); *Commonwealth* v. *Flanagan,* 20 Mass. App. Ct. 472, 476 (1985). Since the victims had identified the defendant within twenty-four hours of the robbery, there can be little doubt that the police did have probable cause to support an application for a warrant to search the defendant's home for instrumentalities or proceeds. See *Commonwealth* v. *Haefeli,* 361 Mass. 271, 285-286 (1972), vacated sub nom. *Haefeli* v. *Chernoff,* 394 F. Supp. 1079 (D. Mass.), rev'd 526 F.2d 1314 (1st Cir. 1975); *Commonwealth* v. *Cinelli,* 389 Mass. 197, 212-214, cert. denied, 464 U.S. 860 (1983); *Commonwealth* v. *Farrell,* 14 Mass. App. Ct. 1017, 1018 (1982). See also *Commonwealth* v. *Vynorius,* 369 Mass. 17, 25 (1975) (probable cause to search for marihuana in residence of person who had sold marihuana three days before); *Commonwealth* v. *Cefalo,* 381 Mass. 319, 330, 331 (1980) (probable cause to search residence of person identified as murderer for bloodstained clothing and gun).

This case is governed in principle by *Commonwealth* v. *Callahan,* 386 Mass. 784, 790-792 (1982), where the trial judge, in his instructions, provided the jury with an "objective reason," based on a statute, for a Commonwealth psychiatrist's failure to await certain test results before submitting his report. There, as here, the instruction was one-sided, failing to give the jury a balanced picture of the governing law. In context the standard given for a finding of probable cause, left unelaborated, was overly restrictive ("Strong reason to suspect that it is there is not enough . . ."); and, while we do not rest our decision on this point, we are skeptical of the appropriateness of leaving the issue of probable cause for the jury's determination. Compare *Stewart* v. *Sonneborn,* 98 U.S. 187, 194 (1878); *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter-House Co.,* 120 U.S. 141, 149 (1887); *Director General of R.Rs.* v. *Kastenbaum,* 263 U.S. 25, 28 (1923), cases of malicious prosecution or false imprisonment in which it was held that it is the court's function to determine probable cause if the facts are undisputed and that the jury's function must be confined to resolving disputes as to the underlying facts.

Here there was no dispute that the victims had identified the defendant as one of the robbers within twenty-four hours of the crime. Probable cause was not a live issue. Its injection into the case was prejudicial to the defense and cannot be thought harmless error. The defendant preserved his rights. There must be a new trial.

*Judgments reversed.*
*Verdicts set aside.*

*Richard Zorza,* Committee for Public Counsel Services, for the defendant.

*Newman Flanagan,* District Attorney, & *Judy G. Zeprun,* Assistant District Attorney, for the Commonwealth, submitted a brief.