COMMONWEALTH *vs.* MORRIS SAPOZNIK.

No. 88-P-1354.

Barnstable. September 15, 1989. - January 30, 1990.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Controlled Substances. Evidence*, Prior misconduct, Relevancy and materiality. *Practice, Criminal*, Defendant pro se, Conduct of prosecutor, Failure to make objection. *Judge. Search and Seizure*, Affidavit.

At the trial of an indictment for possession of heroin with intent to distribute it, during which the defendant acted as his own counsel, a substantial risk of a miscarriage of justice was created by the admission of evidence of the defendant's prior arrest on a separate drug-related charge, where this evidence was highly prejudicial and was, at the most, only minimally probative of a relevant fact. [239-245]

Statements concerning the obligations of the prosecutor [240, n.3] and the judge [241, n.4] when a criminal defendant acts as his own trial counsel.

Where probable cause to issue a warrant to search a criminal defendant's motel room was not a live issue at his trial, the judge erred in admitting evidence of the procedure for issuance of the warrant and in permitting the prosecutor to comment on this evidence during closing argument. [245-247]

An affidavit in support of a search warrant contained sufficient details to connect a certain motel room with the presence and use of controlled substances. [247-248]

INDICTMENT found and returned in the Superior Court Department on July 16, 1987.

The case was heard by *Chris Byron*, J.

*Regina Zupan*, Committee for Public Counsel Services, for the defendant.

*Julia K. Vermynck*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On May 9, 1987, the Provincetown police obtained a warrant to search the defendant's motel room for drugs. As a result of that search a grand jury returned two

indictments, one charging the defendant with unlawful pos-
session of heroin with intent to distribute, the other charging
unlawful possession of a hypodermic syringe. The defendant
waived the assistance of counsel and represented himself at
his Superior Court trial on the two indictments. A jury con-
victed the defendant of unlawful possession of heroin with
intent to distribute and acquitted him on the second charge.
The defendant has raised several issues on appeal. In order to
place the issues in perspective, we summarize the Common-
wealth's evidence introduced at trial pertaining to the search
of the motel room.

A Provincetown police officer conducted a surveillance of
the defendant's motel room on May 9, 1987. The surveil-
lance lasted approximately ten to twelve hours. The officer
observed the defendant, a woman named Patricia Tedeschi,
and a known heroin user, one Salvador, enter and leave the
room several times. Later the same day, the officer examined
the contents of a garbage bag. It contained two hypodermic
syringes, pieces of facial tissue with blood spots on them,
small plastic bags, and small paper bags. Some of the bags
had been partially burnt. The officers also found a room re-
ceipt for the defendant's motel room and lottery tickets dated
May 8. The police then applied for a warrant to search the
defendant's room for drugs.

After receiving the warrant, the police proceeded to the
defendant's room and entered it. They discovered the defend-
ant sitting on one bed and Tedeschi on the other. Another
woman, one Hadeas, was leaving the room just as the officers
arrived at the door. She was searched and found to have her-
oin, cocaine, and syringes in her possession.

During the room search, a police officer discovered heroin
and bundles of money in the top left drawer of a bureau lo-
cated at the foot of the defendant's bed. The heroin was in
the form of fifteen packets inside a yogurt container and an-
other hundred packets beside the yogurt container. Next to
the drugs in the yogurt container was $3,000 in cash, divided
into three bundles of $1000 each, in denominations of hun-
dreds, fifties, twenties, and tens. Two hypodermic syringes

and a burnt spoon containing cotton were in the same drawer. Also, $220 in twenties and tens was lying on the top of a table near the defendant's bed. Another burnt spoon with a white residue was found on the table. The police arrested the defendant and the two women.[1]

The defendant presented the following evidence in his defense. Tedeschi testified that the heroin discovered in the room belonged to her and she kept it hidden in two yogurt containers so that the defendant would not discover it. She stated that she wanted to conceal the heroin from the defendant "because [he] would have been real mad at [her].... [He] would have left [her]." She knew that the defendant had entered a drug treatment program at some unspecified time before the day of the room search, and the defendant had not used heroin in her presence since his treatment. As far as she knew, the money discovered in the room belonged to the defendant as a result of an insurance settlement six to seven months prior to the search of the room. Tedeschi also stated that the defendant's money was already in the bureau drawer when she placed the drugs there.

The defendant testified in his own behalf. He stated that, while in the military in Israel, he was severely wounded and, as a result, he was treated with morphine and demerol. Because of that medication, he became a heroin addict and remained addicted for approximately twenty years. Sometime within the six to seven months prior to his arrest the defendant had admitted himself to a treatment program. After leaving the program, the defendant testified, he did not use or sell heroin. He denied that the hypodermic needles or drugs found in his room were ever in his possession. He stated that the money found in the room was part of $14,600 he had received as an insurance settlement some six or seven months before his arrest.[2]

---

[1]Tedeschi was indicted as a result of the room search. She pleaded guilty and was sentenced in a separate proceeding. There is nothing in the record about the fate of Hadeas.

[2]As a result of a stipulation the judge instructed the jury that the defendant had received in October, 1986, approximately $14,000 from an insurance company.

We now discuss the issues raised by the defendant.

A. *Evidentiary issues.* The defendant claims that he was denied a fair trial by the admission of testimony concerning (1) his prior drug-related arrest and (2) the procedure by which the search warrant was obtained.

. 1. *Evidence of defendant's prior drug-related arrest.* Before· opening statements, the prosecutor informed the judge and the defendant at a side-bar conference that he wanted to offer, at the trial, evidence of a "prior bad act" of the defendant. The prosecutor proposed that he be allowed to introduce testimony that a motor vehicle which the defendant was operating had been stopped by the Provincetown police on April 24. The police made the stop after learning "a drug deal had just gone down involving a motor vehicle." After a search, the police seized some syringes from a jacket located between the defendant and a woman passenger, later identified as Tedeschi, and "$1100" from the defendant. The prosecutor asked for a ruling on admissibility before he elicited the testimony "from the witness in front of the jury." The judge declined to rule until the prosecutor had presented his "primary" evidence.

The trial commenced and the first three Commonwealth witnesses testified as to various aspects of the search of the room. The judge then permitted the defendant to interrupt the Commonwealth's case and present the testimony of Tedeschi, as an accommodation to her. She testified on direct examination about the room search as previously related in this opinion. The defendant's questions to her were typical of those asked by most pro se defendants — they were often rambling and unfocused, and frequently confused the witness. However, none of his questions or her answers even remotely referred to the April 24 incident on which the prosecutor had requested an advance ruling from the judge.

During his cross-examination and without requesting a bench conference, the prosecutor asked Tedeschi, "What happened on [April 24]?" She responded that she did not know. The defendant objected to the question, but the judge did not rule on that objection because the witness had stated

that she did not know what happened on that day. The defendant then told the judge that the line of inquiry was irrelevant. The judge did not respond.

The prosecutor, without further objection from the defendant, proceeded to ask Tedeschi a series of questions about the April 24 incident, which she answered.[3] As a result the jury learned that on April 24, 1987, a Provincetown police officer stopped a motor vehicle which the defendant was operating and in which Tedeschi and one Lipka were passengers. The police searched the vehicle and discovered a "couple" of syringes with heroin residue in a jacket. The police then asked the occupants of the automobile who owned the jacket, and the witness said it was hers. She did not know what the police seized from the defendant.

After Tedeschi's testimony, the Commonwealth resumed the presentation of its case. The Provincetown police officer who had stopped the automobile on April 24 and arrested the defendant testified next. The officer said on direct examination that he stopped the automobile as a result of a telephone call. He stated he advised the defendant that he had received

---

[3]The prosecutor, before asking Tedeschi questions about the April 24 incident, should have alerted the judge and the defendant at a bench conference that he was about to inquire into the subject upon which the judge had refused to rule prior to trial.

There are other instances in the record which give the impression that the prosecutor was taking advantage of the defendant's pro se status. For example, in his direct examination of the police officer who had made the April 24 arrest and in his cross-examination of the defendant the prosecutor appeared to take special pains to ensure that the jury heard hearsay testimony of an anonymous tip that the defendant was selling drugs at the town hall and had narcotics in his automobile.

The prosecutor's conduct was highly improper. A prosecutor's role at a trial does not change where the defendant represents himself. As where the defendant is represented by counsel, the prosecutor "may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger* v. *United States*, 295 U.S. 78, 88 (1935).

We note that the prosecutor might have been encouraged in his conduct by the refusal of the judge to intervene in the trial unless there was an objection by the defendant. For our comments on the judge's conduct of the trial, see *infra* note 4.

We also note that appellate counsel was not the prosecutor at trial.

"information that [the defendant] had narcotics in the vehicle." The officer told the jury that he found a jacket in the automobile containing a syringe, a cotton ball, and "what appeared to be heroin residue" in the pockets. He asked the occupants who was the owner of the jacket. No one replied, so he asked the question again. Then, according to the witness, the defendant yelled to Tedeschi, "Tell him it's yours, tell him its yours." Tedeschi then told the officer that she owned the jacket. After the defendant was searched, $1,182 was seized from his pocket. Both the defendant and Tedeschi were arrested. The police officer testified that he took the items removed from the jacket to a drug laboratory, where an analysis for heroin was "positive."

In response to the defendant's questions, the police officer again explained his reasons for stopping the defendant's automobile. He also said that he had received information on April 17 from an anonymous informant that two people in an automobile similar to the defendant's had been selling narcotics in front of the town hall.

Before the resumption of his trial on the next day, the defendant moved for a mistrial because of the admission of evidence concerning his April 24 arrest. The judge acknowledged that the prosecutor had asked him before trial for a ruling on the admissibility of such evidence and that he had declined to rule at that time. The judge then stated that he had allowed testimony of the defendant's April 24 arrest in evidence because "[t]here was no objection." He denied the motion for a mistrial.[4]

---

[4]It is obvious from the record that it was the judge's intention not to intervene in the trial or rule on the admissibility of evidence unless the defendant objected. He was relying, perhaps, on the often repeated principle that a pro se defendant must comply with "relevant rules of procedural and substantive law." *Faretta* v. *California*, 422 U.S. 806, 834-835 n.46 (1975). *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 847 (1983). *Commonwealth* v. *Barnes*, 399 Mass. 385, 392 (1987). If so, he was interpreting those decisions too broadly and as a consequence abdicating his proper role as a judge.

Whether a party is represented by counsel at a trial or represents himself, the judge's role remains the same. The judge's function at any trial is to be "the directing and controlling mind at the trial, and not a mere func-

Commonwealth *v.* Sapoznik.

On cross-examination, the prosecutor asked the defendant numerous questions concerning his April 24 arrest. Some of the questions contained suggestions that the defendant had been observed selling drugs in front of the town hall.

The prosecutor, in his closing argument, informed the jury:

"Do you think that on April the 24th, when that motor vehicle was stopped— And let me say one thing to

tionary to preserve order and lend ceremonial dignity to the proceedings." *Commonwealth* v. *Wilson*, 381 Mass. 90, 118 (1980), quoting from *Commonwealth* v. *Lewis*, 346 Mass. 373, 379 (1963), cert. denied, 376 U.S. 933 (1964), and *Whitney* v. *Wellesley & Boston St. Ry.*, 197 Mass. 495, 502 (1908).

At times during the course of any trial, even when a party is represented by counsel, it may become necessary for a judge to intervene although there has been no objection to the admissibility of certain evidence. In a decision concerning a trial at which the defendant had been represented by experienced counsel, the Supreme Judicial Court stated that, "[w]hile much discretion and leeway must be given to counsel to pursue a particular trial strategy, the judge is not required to sit idly by while counsel for either side questions a witness in an effort to obtain an answer which could be the basis of either a motion for mistrial or a claim on appeal that prejudicial matters were brought to the attention of the jurors." *Commonwealth* v. *Wilson, supra.* That observation is equally true where the defendant represents himself.

There are numerous instances in the record, some set out in the text of this opinion, where the judge should have interjected himself into the trial, even in the absence of an objection from the defendant. One example is the manner in which the judge handled the admission of the evidence of the April 24 arrest of the defendant. He had told the prosecutor and the defendant, prior to trial, that he was reserving a ruling on the admissibility of that evidence. Yet, he later allowed such evidence on the sole basis that the defendant failed to object to its admission. It requires no special hindsight on our part to state that the judge should have intervened when the prosecutor began questioning Tedeschi about the April 24 arrest and, at least, should have held a voir dire on its admissibility.

We are not ruling that a judge must become a lawyer for an unrepresented defendant. In this case, however, the judge should have recognized very early in the trial that the prosecutor was engaging in improper tactics and taking advantage of the defendant's unrepresented status. The judge should have promptly intervened, not to be of assistance to the defendant, but to assert a judge's traditional role of making sure that all the parties receive a fair trial. See *Grubbs* v. *State*, 255 Ind. 411, 413-416 (1970).

A pro se defendant is not entitled to any greater protection than a defendant represented by counsel — but he is not entitled to any less protection either.

you about the whole nature of the evidence that you heard about the 24th.

Only insofar as you find that helpful to you in determining the issue of whether or not this fellow had knowledge of drugs, of those drugs that were in the room on May the 9th — That's what he's charged with. But yet you have heard some evidence of activity on April the 24th.

It's probative, I would suggest to you, only on the issue of whether or not that fellow had knowledge of the drugs in his room on May the 9th. You shouldn't consider it as to whether or not he's guilty of the offense on May the 9th, or that he has a propensity, the law would say, to commit a crime.

It's only relevant on that single issue of: Did he have knowledge?

And it's only proper that you consider it under the rules on that particular issue.

But, what does it suggest to you? That here's a fellow who is telling you he didn't know anything about those drugs in that room. But on April 24th he knew something about the drugs, didn't he?"

The judge, in his final instructions, did not make any reference to the April 24 incident.

The defendant claims that evidence of his arrest on April 24 was inadmissible because it was irrelevant to the charges for which he was being tried. He also contends that the evidence was highly prejudicial in view of its contents and the judge's failure to instruct the jury as to its limited purpose.

"It is a fundamental rule that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985). The rule exists because "[s]uch evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defence, raises a variety of issues, and thus diverts the attention of the jury from the [crime]

immediately before it; and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him." *Commonwealth* v. *Jackson*, 132 Mass. 16, 20-21 (1882).

An exception to this general rule may be made when the evidence is admissible for other relevant purposes, *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973), and where the danger of prejudice does not outweigh the probative value of the evidence. *Commonwealth* v. *Tobin*, 392 Mass. 604, 613-614 (1984). Otherwise stated, the rule is "that evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it . . . ." *Commonwealth* v. *Blow*, 362 Mass. 196, 201 (1972), quoting from *Harper* v. *United States*, 239 F.2d 945, 946 (D.C. Cir. 1956). *Commonwealth* v. *Yelle*, 19 Mass. App. Ct. 465, 471-472 (1985).

Here, the prosecutor claimed to offer the challenged evidence to show the defendant's knowledge of the existence and location of the heroin discovered in his room on May 9, 1987. Knowledge relevant to proof of the crime charged is a recognized exception to the rule against admission of evidence of prior bad acts. *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979). *Commonwealth* v. *Brown*, 389 Mass. 382, 384 (1983).

The relevance of the April 24 incident to the defendant's alleged guilty knowledge of the syringes and 115 packets of heroin in the motel room he shared with Tedeschi is slight. At most, such evidence might be probative of the defendant's knowledge that, at the time of the April 24 arrest, Tedeschi was actively involved in the use of heroin. However, it cannot rationally be inferred from that knowledge that the defendant knew of the existence, two weeks later, of syringes and a large quantity of heroin intended for distribution in the motel room. Because evidence of the April 24 arrest of the defendant was, at best, minimally probative of a relevant fact, the

prosecutor should not have been permitted to introduce it. *Commonwealth* v. *Yelle, supra* at 470-472 (error to permit introduction of evidence of prior bad act where probative value was "nugatory or nearly so").

By contrast with its limited relevance, the evidence of the April 24 arrest was highly prejudicial. As part of the evidence concerning that incident, the jury heard testimony that an informant had told the police that the defendant had been selling drugs at the town hall and that the police had received information that the defendant's automobile contained narcotics. Furthermore, the judge did not instruct the jury that they could not infer from the evidence of the April 24 arrest that the defendant had a propensity to commit the type of crimes for which he was on trial.

The admission of the evidence was not harmless error. The credibility of the police officers, Tedeschi, and the defendant was the main issue at trial. A police officer testified that most of the heroin was discovered in the same drawer that held the money, suggesting that the defendant, who admitted ownership of the money, must have known of the existence of the heroin as well. In contrast, Tedeschi testified that all of the heroin was hidden inside yogurt containers in the drawer, supporting the defendant's asserted ignorance of the drugs. The prejudicial evidence improperly supported the officer's credibility.

It was error for the judge to admit in evidence the prior drug-related arrest of the defendant. Because the error created a substantial risk of a miscarriage of justice, there must be a new trial.

2. *Evidence of search warrant procedure.* The defendant claims that the judge committed error in permitting the prosecutor to introduce evidence regarding the procedure by which the police obtained the warrant to search the defendant's motel room. We briefly discuss the issue because it may come up again on retrial.

As a result of questions from the prosecutor, a police officer stated that he had gathered all the information from the surveillance of the defendant's motel room and reduced it to

an affidavit. This information, the officer testified, agreeing with the prosecutor's leading question, was in "the nature of probable cause." The witness, again in response to leading questions, then testified that he "took all that stuff to a magistrate, an officer of the court," and "put it all before [the magistrate] in the form of an affidavit." According to the witness, the magistrate then "approved the warrant, signed it, issued it."

In his closing argument, the prosecutor commented on the evidence regarding the warrant procedure. He said:

> "The police, on May the 9th, go into this hotel room. Now, you might find that wasn't an accident, ladies and gentlemen. They had a search warrant given by a magistrate from a court, having presented to that magistrate an affidavit that makes out the probable cause to believe that there are drugs in that room."

The admission in evidence of the details of the warrant procedure and the prosecutor's subsequent comments in his closing argument were error. Probable cause to search was not a live issue in the case, and the fact that the magistrate "approved the warrant," the execution of which resulted in the seizure of drugs from the defendant's motel room, had no rational tendency to prove that the defendant intended to exercise control of or distribute those drugs. Thus the evidence was irrelevant and inadmissible, see *Commonwealth* v. *LaCorte*, 373 Mass. 700, 702 (1977), and its introduction was error. Compare *Commonwealth* v. *Jackson*, 23 Mass. App. Ct. 975, 976 (1987)(instruction improperly injected into trial issue of probable cause to search).

The error was compounded by the prosecutor's closing argument about the matter. His argument suggested to the jury that they could properly believe the police officer's testimony, especially where the prosecutor stated (as quoted above at 246) that the police entrance into the motel room "wasn't an accident . . . [because] a magistrate from a court . . . [found] probable cause to believe" the officer's conclusions. In effect, the prosecutor used a magistrate to vouch for

the credibility of the police officers; this was error. See *Commonwealth* v. *Olszewski*, 401 Mass. 749, 760 (1988), where the court stated that a *prosecutor* cannot vouch for the credibility of a Commonwealth witness.

We trust that at the new trial the judge will inform both the Commonwealth and the defendant that no mention should be made of the warrant procedure and whether the police had probable cause to search the motel room.[5]

B. *Validity of the search warrant.* The defendant contends that the evidence seized from the motel room must be suppressed because the affidavit supporting the warrant failed to demonstrate a nexus between the narcotics sought to be seized and the motel room.

In order to establish probable cause to search, an affidavit must "contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched." *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980). "[T]he nexus between the items to be seized and the place to be searched need not be based on direct observation," *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213 (1983), but may be found in "the type of crime, the nature of the . . . items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [contraband]." *Ibid.*, quoting from *United States* v. *Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970).

---

[5]The Commonwealth claims in its brief that it was the defendant, not the prosecutor, who injected the issue of probable cause to search and the details of the warrant procedure in the case. A review of the record demonstrates that appellate counsel is in error.

During his opening statement the prosecutor quickly informed the jury that the defendant had rented a motel room and was occupying it "at the time that *the police executed the search warrant that had been given to them by a magistrate . . .*" (emphasis supplied). Later, it was the prosecutor, not the defendant, who first questioned a police officer as to how he had obtained the search warrant.

After the prosecutor had referred to the search warrant and the warrant procedures, the defendant asked questions of the police witnesses about probable cause to search the motel room and the automobile.

The affidavit contained the details of the surveillance, including the contents of the garbage bag.[6] The items discovered in the garbage bag together with the observations made during the surveillance linked the motel room with the presence and use of narcotics. There was no error in denying the defendant's motion to suppress the evidence.

*Judgment reversed.*

*Verdict set aside.*

---

[6]See summary of evidence pertaining to search, *supra* at 237.