### COMMONWEALTH *vs.* DANTE FERRARA, SR.

No. 90-P-1044.

Suffolk. October 17, 1991. - December 10, 1991.

Present: PERRETTA, FINE, & IRELAND, JJ.

*Evidence*, Warrant application, Admissions and confessions. *Practice, Criminal*, Sentence.

At a criminal trial no substantial risk of a miscarriage of justice was created by the admission of two police officers' testimony concerning the application for, and a magistrate's issuance of, a warrant to search premises on which the defendant was present when police discovered contraband, where the challenged testimony had little, if any, tendency to bolster the credibility of the officers' testimony about the contents of the application and where much of the challenged testimony was a proper response to defense counsel's cross-examination. [650-652]

At a criminal trial, testimony about two statements made, in the defendant's presence, by persons present during the execution of a search warrant were properly admitted under the adoptive admission exception to the hearsay rule where, considering all of the circumstances, the judge could warrantably have found that a reasonable person in the defendant's situation would not have considered himself to be in custody when the statements were made. [652-655]

Where the judge at a sentencing hearing may have been influenced by the prosecutor's misstatement of the period of incarceration the defendant would serve if the sentence recommended by the prosecutor were imposed, the judge was to have the opportunity, on remand, to reconsider the sentence. [655-656]

INDICTMENTS found and returned in the Superior Court Department on July 12, 1988.

The cases were tried before *Patrick J. King*, J.

*M. Page Kelley*, Committee for Public Counsel Services, for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

FINE, J. After a jury trial in the Superior Court, the defendant was convicted of possession of heroin with intent to

distribute, trafficking in cocaine, and possession of a rifle without having a firearm identification card.[1] The defendant seeks reversal on two grounds. First, he claims that the trial judge should not have allowed two police officers who participated in a search to give detailed testimony concerning the search warrant application and its approval by the magistrate. Second, he claims that the judge should not have admitted certain hearsay statements as adoptive admissions. We conclude that there is no basis for reversal. We do agree with the defendant's claim, however, that misinformation from the prosecutor about the effect of the sentence, which the prosecutor recommended and the judge imposed, requires that the defendant be resentenced.

Only two witnesses, Boston police detectives Nicholas Saggese and Joseph Mugnano, testified at trial. Their testimony was as follows. While conducting a surveillance of the New England Air Freight (NEAF) offices in East Boston from inside a boat stored nearby, Detective Saggese saw the defendant engage in three separate drug transactions on two days. Based on information from Detective Saggese about the first of these transactions, Detective Mugnano obtained a warrant to search the NEAF premises and the defendant's person.

NEAF occupied three rooms, an entrance hall and two offices. The defendant, who knew Detective Saggese, was present when Detectives Saggese and Mugnano, and three other Boston police officers, arrived to conduct the search. The defendant opened the front door to NEAF and let the police in. When he was informed of the search warrant, he said, "Go ahead and search." The defendant identified one of the two offices as his own but told the officers that he had nothing to do with the second. That office, he said, was used by several other persons whose names he did not know. The police opened the unlocked door to the second office and found Brother Pearson seated at a desk. In the defendant's presence, an officer asked Pearson what he was doing there.

[1] We do not consider the defendant's firearm conviction as that indictment was placed on file with the defendant's assent. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

Pointing to the defendant, Pearson said he worked for the defendant. The defendant made no response. Allen Smith, the owner of the building in which NEAF was located, entered the premises during the search. In the defendant's presence, Smith told Detective Mugnano that he had leased the premises to the defendant under the name of NEAF. Again, the defendant made no response.

A considerable amount of drugs (at least $25,000 worth), packaging materials, mixing agents, and other usual paraphernalia of the drug trade were found throughout the premises, but mostly in the office occupied by Pearson. Papers similar to those used in packaging the drugs found in that office were found in the office the defendant claimed was his. A rifle was found in the office occupied by Pearson, but ammunition was found in the office the defendant claimed was his. The NEAF name was found on objects in both offices, and various papers were found throughout the premises which linked the defendant with NEAF. According to the NEAF articles of organization, the defendant was an officer of the company.

After the search was completed, the police arrested the defendant, took him to the station, read him his Miranda rights, and searched him. Keys to the main NEAF door and to both offices were found in his pockets as well as $1,324 in cash.

1. *Evidence regarding search warrant procedure.* During her opening statement, the prosecutor mentioned that the police had obtained a warrant to search the NEAF offices and that they searched the offices pursuant to the warrant. Detective Saggese was permitted to testify, in some detail, that Detective Mugnano had applied for a warrant from the East Boston District Court because he believed that the defendant was selling drugs and that the magistrate "granted" the warrant. In her closing argument, the prosecutor stated that the magistrate "approved" the warrant, which was "valid," after reading the evidence about the surveillance. Defense counsel objected to a few of the questions put to the officers about the search warrant procedure but never explained the basis

for his objections. Nor did he object to the references made to the search warrant procedure during the prosecutor's opening or closing statement.

Some testimony about the search warrant application procedure is generally permissible to explain to a jury why the police were present at the scene of a search and why they did certain things at the scene. See *Commonwealth* v. *Sepulveda*, 6 Mass. App. Ct. 868, 869 (1978); *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 554-555 (1989). Relying on *Commonwealth* v. *Sapoznik*, 28 Mass. App. Ct. 236 (1990), however, the defendant contends that it was error for the judge to allow so wide a range for the two officers' testimony in this case about the search warrant. In *Sapoznik*, we stated that the evidence of the details of the warrant procedure was improperly admitted.[2] We thought that, by referring to the magistrate's finding of "probable cause" and his "approval" of the warrant, the prosecutor, in effect, "used a magistrate to vouch for the credibility of the police officers." *Id.* at 246-247.

Because there were no objections to most of the allegedly improper questions, and because nothing said by defense counsel was sufficient to alert the trial judge to the problem with the testimony referred to on appeal,[3] our inquiry is limited to the question whether there is a substantial risk of a miscarriage of justice. We think there is no such risk. As no witness mentioned that the magistrate had made a finding of "probable cause," the testimony of the officers had little, if any, tendency to bolster the credibility of the officers about the contents of the search warrant application. Moreover, much of the testimony about the warrant was a proper response to cross-examination by defense counsel on two points: first, defense counsel had suggested, through cross-examination, that an arrest should have been made as soon as the defendant was first seen selling drugs; and, second, he suggested that there was an inconsistency between Detective Saggese's testimony that he had observed three drug deals

---

[2] The case was reversed, however, on other grounds.

[3] The *Sapoznik* case was decided after the trial in the present case.

and the search warrant application which referred only to
one. To counter those suggestions, some elaboration of the
warrant procedure was relevant.

2. *Adoptive admissions by silence.* The defendant argues
that it was error to admit, over his objection, testimony about
two statements made to the police officers while the search
was being performed: Pearson's statement that he worked for
the defendant; and Smith's statement that he leased the of-
fice space to the defendant on behalf of NEAF. The testi-
mony was hearsay. Under the adoptive admission exception
to the hearsay rule, however, when an accused remains silent
after hearing a statement tending to incriminate him, both
the statement and the defendant's failure to deny it may be
admissible (but with the exercise of caution, see *Common-
wealth* v. *Boris*, 317 Mass. 309, 317 [1944]; *Commonwealth*
v. *Rembiszewski*, 363 Mass. 311, 316 [1973]) if he heard,
understood, and had sufficient knowledge to reply to the
statement, and if it would have been natural for a person, in
the circumstances, to respond. See *Commonwealth* v. *Boris*,
318 Mass. at 317; *Commonwealth* v. *Burke*, 339 Mass. 521,
532 (1959). No admission by silence may be inferred, how-
ever, if the statement is made after the accused has been
placed under arrest, see *Commonwealth* v. *Kenney*, 12 Met.
235, 238 (1847); *Commonwealth* v. *Morrison*, 1 Mass. App.
Ct. 632, 634 (1973); *Commonwealth* v. *Cohen*, 6 Mass. App.
Ct. 653, 657 (1978), after the police have read him his Mi-
randa rights, see *Commonwealth* v. *Rembiszewski*, 363
Mass. at 316, or after he has been so significantly deprived of
his freedom that he is, in effect, in police custody, see *Com-
monwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 480 (1981),
and cases cited.[4]

---

[4] Some States go further than Massachusetts in restricting the use of
adoptive admissions. For example, in Arizona and Pennsylvania, the prose-
cution is barred from introducing evidence of a defendant's silence in re-
sponse to any question from a police officer or to any statement made in
the presence of the police. See *State* v. *Villareal*, 126 Ariz. 589, 590
(1980); *Commonwealth* v. *Dravecz*, 424 Pa. 582 (1967). In Iowa, adoptive
admissions are inadmissible against a defendant in any criminal trial. See
*State* v. *Kelsey*, 201 N.W.2d 921, 927 (Iowa 1972).

The defendant does not contend that he was unable to hear, understand, or adequately reply to the statements of Pearson and Smith, or that the statements were not incriminatory. Pearson's statement that he was the defendant's employee contradicted the defendant's assertion that he had nothing to do with the office in which the rifle and most of the drugs and drug-related objects were found. Smith's statement further established the defendant's possession and control of the entire suite of offices. In the circumstances, such statements, if false and if made prior to the defendant's arrest or custody, would have had a natural tendency to provoke a denial.

The difficult question is whether, although the defendant was not formally under arrest at the time the statements were made, he was subjected to so coercive an environment that he was, in effect, in "custody." See *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977); *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984). The standard for determining whether there was such a coercive environment is an objective one based on such factors as the place of interrogation, the extent to which the investigation has begun to focus on the suspect, the words and actions of the officers, and the suspect's reasonable understanding as to whether he is free to leave. See *Commonwealth* v. *Bryant*, 390 Mass. at 736-737; *Commonwealth* v. *Tart*, 408 Mass. 249, 258 (1990). "Although the officer may have an intent to make an arrest, either formed prior to, or during the questioning, this is not a factor in determining whether there is present 'in-custody' questioning. It is the officer's statements and acts, the surrounding circumstances, gauged by a 'reasonable man' test, which are determinative." *Ibid.* (citations omitted).

The issue, whether at the time the statements were made the defendant was in police custody, was presented to the trial judge before he overruled the defendant's objections to the admission of the statements. The prosecutor first referred to the statements during his opening, and the defendant objected on the ground that the statements were hearsay. The prosecutor responded that in each instance the defendant's

silence was an adoptive admission. Defense counsel countered that the defendant had no duty to respond to the statements since he was in custody at the time they were made. The judge recognized that the question turned on the defendant's custody status at the relevant times and deferred a ruling until the officers' testimony was heard. Although the renewed objections during the officers' testimony did not make specific reference to the defendant's custody status at the time the statements were made, by overruling the objections, the judge, at least implicitly, found that the defendant was not in custody.

We accord deference to the trial judge's finding if supported by the record. Cf. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). The circumstances attending the search here support the judge's finding. The search was conducted during the daytime at the defendant's place of business. Compare *Commonwealth* v. *Accaputo*, 380 Mass. 435, 452 (1980). The defendant had known Saggese and had admitted the officers willingly to the business premises. The questions the officers asked were routine. The Pearson statement was made early in the search; the Smith statement was made at a mid-point in the search. Although five police officers were involved, there is no evidence that any threatening language or undue force was used, and no restraints were placed on the defendant. Compare *Michigan* v. *Summers*, 452 U.S. 692 (1981) (when the police arrived to execute a search warrant at the defendant's house, the defendant was descending the front steps to leave; the Supreme Court held that the warrant implicitly authorized the action of the police in detaining the defendant during the search).

It is true that the defendant was the focus of the investigation, that after the initial surveillance the police had probable cause to arrest him, and that they also had authority to search his person. It is unlikely, therefore, that the police were of a mind to allow him to leave. The officers' subjective intent, however, was not dispositive. The record gives no indication that during the search the officers conveyed to the defendant any intention to arrest him. Although detective

Mugnano told the defendant when he entered the premises ",that [he] had a search warrant to execute, and that [he was] going to search his premises," he said nothing about searching the defendant's person. Detective Mugnano never showed the defendant the warrant, which included authority to search his person, and the defendant merely "acknowledged" the warrant without looking at it. No search of the defendant's person took place, in fact, until he was formally placed under arrest and taken to the station. In addition, the defendant had no reason to know that Detective Saggese had observed him selling drugs and had probable cause, therefore, to arrest him.

Considering all the circumstances, we think the judge could warrantably have found that, at the relevant time, a reasonable person in the defendant's situation would not have considered himself to be in custody. Even if the judge erred in admitting the two statements, however, we think the error was harmless beyond a reasonable doubt. Other evidence in the case was overwhelming to the effect that the defendant was in control of the NEAF premises, that he was in possession, even if constructively and not exclusively, of all the drugs on the premises, that he had been engaging in drug transactions from the premises, and that he intended to distribute the drugs found in the course of the search.

3. *Sentencing.* When the offenses were committed, trafficking in cocaine of over 100 grams, but less than 200 grams, carried a mandatory minimum State prison sentence of five years and a maximum of up to fifteen years. G. L. c. 94C, § 32E(*b*)(2), as appearing in St. 1983, c. 571, § 3. At the sentencing hearing, the prosecutor recommended a sentence of twelve to fifteen years, and defense counsel recommended a sentence of five years to five years and a day. In response to a question from the judge about the effect of the sentence recommended by the prosecutor, the prosecutor stated, incorrectly,[5] that the defendant would serve four years. The judge imposed the sentence recommended by the prosecutor. It is

---

[5] The Commonwealth so conceded in oral argument on appeal.

unclear whether the misinformation influenced the sentence. In fairness to the defendant, we conclude that the trial judge should have the opportunity to reconsider the sentence on the conviction of trafficking in cocaine. Compare *Commonwealth v. Foley*, 17 Mass. App. Ct. 238, 245 (1983).

The convictions shall stand, but the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*