COMMONWEALTH *vs.* STEVEN GALLATI.

No. 94-P-1911.

Worcester. November 10, 1995. - March 4, 1996.

Present: PORADA, IRELAND, & GREENBERG, JJ.

*Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions. *Practice, Criminal,* Motion to suppress.

A judge of the Superior Court correctly granted a criminal defendant's motion to suppress statements where the judge properly concluded that, given the nature of the interrogation, its setting, and its focus on the defendant, the statements were the product of custodial interrogation without the defendant having been given Miranda warnings. [112-115]

INDICTMENTS found and returned in the Superior Court Department on January 11, 1994.

A pretrial motion to suppress evidence was heard by *Daniel F. Toomey,* J.

An application for an interlocutory appeal was allowed by *Lynch,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Sandra L. Hautanen,* Assistant District Attorney, for the Commonwealth.

*Joseph F. Brennan, Jr.,* for the defendant.

PORADA, J. This is an interlocutory appeal by the Commonwealth from a Superior Court judge's allowance of a motion to suppress statements made by the defendant, a correction officer at the Worcester County house of correction (the facility), to a superior officer during an investigation of a beating of an inmate. The investigation resulted in conspiracy charges against the defendant for assault and battery by means of a dangerous weapon and for violation of the inmate's constitutional rights. Applying the analysis set forth in *Commonwealth* v. *Bryant,* 390 Mass. 729, 736-742 (1984), the judge concluded that the statements were the product of custodial interrogation without the defendant having been

given the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We affirm.

Recognizing that we must accept the motion judge's subsidiary findings absent clear error and that his ultimate conclusions, while entitled to substantial deference, *Commonwealth* v. *Eagles*, 419 Mass. 825, 832 n.9 (1995), are subject to reexamination, we examine his analysis under the factors considered in *Bryant*: "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect . . . ; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation . . . ." *Commonwealth* v. *Bryant*, supra at 737.

1. *Place of interrogation.* The judge determined that the defendant's interrogation by a superior officer took place in a coercive setting. The defendant was interrogated behind closed doors in the office of the deputy superintendent, who was responsible for conducting criminal and internal affairs investigations within the facility. Present during the interview were the deputy superintendent, an armed observer, and a note taker. The office was located in a locked building within the facility. The defendant could not leave this building unless another correction officer unlocked the door. Because the place of interrogation was the defendant's work place where closed doors, locked buildings, and armed guards were routine, the Commonwealth argues that this setting was noncoercive.

While it is true that courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, *Breese* v. *Commonwealth*, 415 Mass. 249, 255 (1993); *Commonwealth* v. *Ferrara*, 31 Mass. App. Ct. 648, 654 (1991), we do not view the office of the defendant's superior to be a familiar or neutral setting. Even though that location was within the confines of the facility, it was not part of his daily work area. Both the office and the building in which it was located were unfamiliar to him. The defendant knew his interrogator only by title and was aware that the interrogator had the power to arrest or discipline him. Accordingly, this office was not the defendant's work place in the sense of "a small, recognizable

community that is the locus of friendships, gossip, common effort, and shared experience." *Immigration & Nationalization Serv.* v. *Delgado*, 466 U.S. 210, 238 (1984), (Brennan J., concurring in part and dissenting in part).

The Commonwealth also argues that the judge's analysis was flawed because he viewed the facts from the perspective of "a reasonable mythical person" rather than the perspective of a reasonable correction officer. As the Commonwealth itself acknowledges, the judge did take into account that the defendant was a law enforcement officer and presumably less susceptible to the coercive consequences of locked buildings and closed doors. Nevertheless, the judge concluded that "a reasonable person in defendant's circumstances" would have found the setting isolating and coercive. This was the proper standard. *Commonwealth* v. *A Juvenile*, 402 Mass. 275, 277 (1988).

Furthermore, the mere fact that the defendant was accustomed to closed doors, locked buildings, and individuals wearing guns would not have precluded the judge from reaching the conclusion he did. The judge did not base his ultimate conclusion on those facts standing alone; he took into consideration the totality of the circumstances. In particular, he focused on the fact that the defendant was escorted to the place of interrogation by his superior and that the setting was the office of a superior officer to whom the defendant owed a duty of obedience by training and organizational mandate. *Commonwealth* v. *Bryant*, 390 Mass. at 737. In these circumstances, the judge properly concluded that a reasonable person in the defendant's circumstances would have perceived the setting as isolating and coercive.

2. *Focus of the investigation.* The judge determined that the investigation had focused on the defendant at the time of the interrogation. He based his conclusion not on the subjective intent of the interrogating officer but upon the objective circumstances of the interview. See *Stansbury* v. *California*, 114 S. Ct. 1526, 1530 (1994). Those circumstances included statements made by the interrogating officer at the outset of the interrogation that he was conducting an investigation into a beating of an inmate by other inmates in complicity with members of the prison staff and that the matter was "serious," "a felony" and could be reported to the grand jury. Throughout the interview, the officer alluded to the inmate's

presence in the adjoining room and informed the defendant that the inmate was "ratting him out." In addition, the judge found that the officer repeatedly told the defendant "to be honest" and that he could help him only if the defendant cooperated.

The Commonwealth's only argument is that it is not clear from the judge's findings that the investigation had focused on the defendant. While such statements as "be honest" and "it would be better if you cooperated" are noncoercive, *Commonwealth* v. *Mandile*, 397 Mass. 410 (1986), other statements made by the officer to the defendant, e.g., the inmate is "ratting you out," certainly would suggest to a reasonable person in the defendant's position that he had become the focus of a criminal investigation. Cf. *Commonwealth* v. *Sim*, 39 Mass. App. Ct. 212, 221 n.9 (1995). The judge did not err in concluding that the investigation had focused on the defendant.

3. *Nature of the interrogation.* The judge found that the questioning was "formal, domineering and relentless . . . [q]ualities evocative of custody." The judge found that at least twice during the questioning the defendant began crying and each time the officer continued the interrogation and on one occasion urged the defendant "to be honest" with him.

Relying upon *Commonwealth* v. *Harvey*, 397 Mass. 351, 355 (1986), and *United States* v. *Indorato*, 628 F.2d 711 (1st Cir., cert. denied, 449 U.S. 1016 (1980), the Commonwealth argues that the judge wrongly concluded that the questioning was coercive. The thrust of the Commonwealth's argument is that the defendant's interrogation could not have been custodial, because at no time was the defendant threatened with disciplinary action or the loss of his job. However, we do not perceive either the *Harvey* or *Indorato* decisions as being outcome determinative. The issue in those cases was whether the statements made by a police officer to a superior were involuntary, not whether *Miranda* warnings were required. *Harvey*, *supra* at 355 n.2; *Idorato*, *supra* at 715. Here, it was entirely proper for the judge to consider the nature of the defendant's employment and the duty owed by him to a superior officer in determining whether a reasonable person in the defendant's position would have believed he was free to leave at any time. Moreover, apart from the nature of the relationship between the defendant and a superior officer and the paramilitary organization

of the sheriff's department, the judge determined that the questioning was aggressive. As the judge noted, each time the defendant broke down into tears, the officer continued the interrogation and on one occasion urged the defendant to be more honest. There was no idle conversation and the defendant in no way controlled the parameters of the conversation. *Bryant*, 390 Mass. at 738. *Commonwealth* v. *Gil*, 393 Mass. 204, 212 (1984). We conclude that the judge properly determined the third *Bryant* factor in the defendant's favor.

4. *Freedom to leave.* The judge found that the defendant was free to leave at the conclusion of the questioning and was not arrested despite his admissions which implicated his complicity in the beating. Nevertheless, the judge found that at the time of the defendant's statement he was not free to leave and that his eventual release, while some evidence of noncustody, paled in comparison with the custodial indicia. The Commonwealth argues that the judge erred because there is no better proof of noncustodial interrogation than the fact that the defendant was not arrested and was free to leave at the conclusion of the questioning.

Since no one factor under the *Bryant* analysis is dispositive, the mere fact that the defendant was not arrested is not conclusive on the question of whether there was custodial interrogation. See *Bryant, supra* at 737. Moreover, the true test is whether at the time his incriminating statement was made a reasonable person in the defendant's position would have believed that he was free to end the interrogation by leaving. *Commonwealth* v. *Gil, supra* at 212. Given the nature of the interrogation, its setting, and its focus on the defendant, we conclude that a reasonable person in the defendant's circumstances would not have believed he was free to leave until his superior officer released him. Cf. *Commonwealth* v. *Jung*, 420 Mass. 675, 688 (1995).

> *Order allowing motion to suppress affirmed.*