COMMONWEALTH vs. RICHARD GILL, JR.

No. 93-P-966.

Suffolk. March 2, 1994. - October 14, 1994.

Present: KASS, SMITH, & LAURENCE, JJ.

*Practice, Criminal,* Instructions to jury, Assistance of counsel, Sentence. *Assault and Battery. Self-Defense. Evidence,* Prior misconduct, Relevancy and materiality, Medical record. *Constitutional Law,* Assistance of counsel.

At the trial of a complaint for assault and battery the judge was not required to instruct the jury, on his own initiative, on self-defense, where no evidence warranted such an instruction. [460-462]

At the trial of criminal complaints the judge correctly allowed testimony of the defendant's admission with respect to one complaint, and the fleeting and vague reference in the defendant's admission to his other bad acts was not so prejudicial as to require a new trial. [462-463]

At the trial of a complaint for assault and battery, medical testimony concerning the victim's injuries was relevant and admissible to establish that the defendant's assault was intentional and not accidental, and to demonstrate the reason ("permanent brain injury") for the victim's lack of memory of the incident [463-464]; further, hospital records and photographs of the victim were relevant and admissible to the jury in understanding the medical evidence [464].

A criminal defendant failed to demonstrate on appeal that his trial counsel had rendered ineffective assistance by reason of various alleged actions and omissions in the preparation of the case and conduct of the trial. [464-469]

At a sentencing hearing in a criminal case, the judge properly considered evidence of the defendant's school disciplinary records, and there was no merit to the defendant's claim that the judge used information about the defendant's past misconduct to punish him for crimes with which he had not been charged. [469-470]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on February 18, 1992.

On transfer to the jury session of the Dorchester Division, the case was tried before *R. Peter Anderson,* J., and motions

to revise and revoke sentence and for a new trial were heard by him.

*Charles M. Campo, Jr. (Floyd H. Anderson* with him) for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

SMITH, J. As a result of incidents occurring on February 18, 1992, the defendant was the subject of a three-count complaint. Two counts charged him with assault and battery on Jeffrey Ball and Bradley Giles, respectively, and the remaining count charged the defendant with assault on Ball. At a jury-of-six session, a jury returned verdicts finding the defendant guilty of all three counts. On appeal, the defendant claims that the judge committed error in (1) failing to instruct the jury sua sponte on self-defense, (2) allowing the jury to hear prejudicial evidence, (3) denying his motion for a new trial, and (4) denying his motion to revoke and revise his sentences.

We summarize the Commonwealth's evidence in some detail as background for our analysis. At approximately 11:15 P.M. on January 12, 1992, Jeffrey Ball and the victim, Bradley Giles,[1] both students at Northeastern University, were present at a fraternity party. The defendant, an acquaintance of his (Brent Jaffy), and their girlfriends were also at the party. Jaffy was a member of the fraternity; the defendant and his girlfriend had come from New York to visit Jaffy and his girlfriend and were staying at Jaffy's apartment. There were about 250 people at the party.

About forty-five minutes after Ball and the victim had arrived at the party, they were standing near a table talking to each other. Jaffy and the defendant were standing across the table. Ball did not know either the defendant or Jaffy. The defendant tapped Ball on the shoulder and asked him to tell the defendant's girlfriend, who was standing behind Ball, that he was ready to leave. Ball, in turn, tapped the girlfriend on the shoulder and told her that the defendant was

---

[1]Ball was a victim also, but we employ the term "victim" only in regard to Giles to avoid confusion.

ready to leave. The girlfriend made no response, and Ball resumed his conversation with the victim.

About five minutes later, the defendant asked Ball whether he had conveyed the message. Ball replied, "I tried [to, but] she wasn't paying any attention." Ball then told the defendant that he "might as well just come over and get — get her because she's not listening to me." The defendant called Ball "wise" and punched him in the right eye, a "quick sucker punch" according to Ball, which caught him off balance and caused him to fall to the floor. The beer that Ball was holding spilled on the defendant's girlfriend. Ball did not retaliate and Jaffy restrained the defendant and tried to get the defendant and their girlfriends to leave. Other persons at the party ushered Ball out of the house, and the victim accompanied Ball outside. The defendant also went outside with his girlfriend. Once outside, the defendant's girlfriend accused Ball of spilling beer on her. The defendant walked up to Ball and threatened to kill him. Ball became scared and ran away.

The defendant took off his watch and started running after Ball. The victim, in turn, ran after Ball and the defendant. Because Ball was a former high school track star, the defendant was unable to catch him and stopped running. As the defendant turned around to go back to the fraternity house, the victim was running by him. The defendant hit the victim once on the left side of the head, in the temple area, with his fist. The victim fell to the ground. The defendant stood over the victim and tapped the victim's foot as if to see if the victim was "out." The defendant then walked back to the fraternity house where he met Jaffy and their girlfriends. The defendant told them that "I got him." They all then went to a nightclub where the defendant told an acquaintance that he had been in a fight. He showed her his cut and bleeding hand.

The victim, after being struck by the defendant, lay flat on the ground with his eyes "rolled back." An ambulance was called, and the victim was transported to the emergency room of Brigham and Women's Hospital. At the hospital, the

victim was found to be in critical condition and he was placed in the intensive care unit.

The police were notified, and an investigation commenced into the incident. A detective brought Ball to the fraternity house where he identified Jaffy from a plaque displaying photographs of fraternity members. The detective, accompanied by Ball, went to Jaffy's apartment. He was not there, and they were directed to Jaffy's girlfriend's apartment in the same building where the defendant answered the detective's knock. It was dark in the hallway, and Ball did not recognize the defendant as the person who had struck him and later chased him down the street. The detective identified himself as a Boston police officer and asked for Jaffy. The detective followed the defendant back into the apartment and, upon discovering Jaffy in bed, asked him to get dressed and to return to his apartment for an interview. After interviewing Jaffy for thirty to forty minutes, the detective left, and Jaffy returned to his girlfriend's apartment.

When Jaffy left his girlfriend's apartment with the detective, the defendant was questioned by both his girlfriend and Jaffy's about what had happened during the chase. The defendant first denied doing anything and then told them that he had "pushed a kid." The next morning the defendant and his girlfriend were supposed to have breakfast with Jaffy and his girlfriend. However, the defendant and his girlfriend decided to skip breakfast and took the shuttle back to New York. Eventually, a warrant was issued for the defendant's arrest, and he voluntarily surrendered to the police. We will recite additional evidence as we consider the defendant's issues.

1. *The failure to instruct sua sponte on self-defense.* The defendant claims that, in regard to the count charging him with assault and battery on the victim, the judge committed error in not, sua sponte, instructing the jury on self-defense.[2] In support of his argument, the defendant points to Ball's

---

[2]Ball was a named victim in one of the assault and battery counts. On appeal, the defendant does not argue that the judge should have instructed the jury on self-defense on that count.

testimony that, "once I got around the corner, [the defendant] stopped running" and to another witness's testimony that the victim was running behind the defendant and that the defendant "turned around and right when he turned around [the victim] was running by . . . [and the defendant] hit the [victim] from the side."

"A criminal defendant is entitled to an instruction on self-defense if the evidence, viewed in the light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Burbank*, 388 Mass. 789, 794 (1983). Therefore, even if there is no request for an instruction on self-defense, "a judge should instruct on this issue if there is an appropriate hypothesis in the evidence." *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 751 (1980). To warrant such an instruction in a case like this where the defendant used his fists, there must be evidence that the defendant "reasonably believed that his personal safety or life was in peril." *Commonwealth* v. *Bastarache*, 382 Mass. 86, 105 (1980). Taking the evidence in the light most favorable to the defendant, this requirement was not met. There was no evidence that the victim struck or attempted to strike the defendant or otherwise engaged in any conduct that would have caused the defendant "reasonably [to] believe[ ] that his personal safety or life was in peril." *Ibid.*

Further, the evidence clearly showed that it was the defendant and not the victim who initiated the assault on Ball and the subsequent chase which resulted in the striking of the victim. " '[T]he right of self-defense ordinarily cannot be claimed by a person who provokes or initiates an assault unless that person withdraws in good faith from the conflict and announces his intention to retire.' Annot., Withdrawal, After Provocation of Conflict, as Reviving Right of Self-Defense, 55 A.L.R. 3d 1000, 1003 (1974)" (emphasis omitted). *Commonwealth* v. *Naylor*, 407 Mass. 333, 335 (1990). *Commonwealth* v. *Curtis*, 417 Mass. 619, 632-633 (1994). There was no evidence that the defendant withdrew from the conflict and announced his intention to retire. Rather, the evidence showed that the defendant struck the victim while the victim

was running *past* the defendant. Therefore, based on the circumstances, the judge was not required, sua sponte, to instruct the jury on self-defense.[3]

2. *The claim that the jury heard prejudicial evidence.* The defendant contends that the judge committed error in allowing the jury to hear what he claims was "inflammatory prejudicial" evidence. According to the defendant, the most significant error occurred during the testimony of Jaffy's girlfriend. She testified that after the defendant returned to New York, he telephoned Jaffy and her and told them that he did "beat up" the victim, planned to get an attorney and would tell his parents and the attorney that Jaffy and his girlfriend were not involved. When Jaffy's girlfriend asked him why he had not told the detective the night that Jaffy was questioned that they were not involved, the defendant replied that "he 'was already dealing with a case . . . back home in New Jersey . . . and he didn't want to get arrested in Boston due to his problems back home." The defendant objected but was overruled.

"It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose." *Commonwealth* v. *Triplett*, 398 Mass. 561, 562 (1986), quoting from *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). The defendant cites *Commonwealth* v. *Sapoznik*, 28 Mass. App. Ct. 236, 243-245 (1990), in support of his argument that the references to a "case" and "problems back home" were so prejudicial as to require a new trial. In *Sapoznik*, the defendant was charged with violations of the narcotic laws. The Commonwealth was allowed to produce evidence of a prior drug-related arrest of the defendant. In the circumstances of that case, we held that the evidence of the *arrest* was highly prejudicial and of minimal value and reversed the

---

[3]Because there was no evidence suggesting self-defense, trial counsel was not ineffective in not requesting a self-defense instruction. *Commonwealth* v. *Tyler*, 418 Mass. 143, 146 (1994).

conviction. Here, the judge ruled that the conversation was admissible as an admission by the defendant that he "beat up" the victim. We agree with the judge as to that portion of the conversation. In regard to the defendant's argument on appeal, we think that the references to a "case" and "problems back home" were too fleeting and vague to require reversal on the basis of the "bad character" principle.

The defendant also claims that the judge erred in allowing the jury to hear extensive evidence concerning the condition of the victim after the incident. According to the defendant, the evidence was not relevant and highly prejudicial.

The director of the trauma center and the surgical intensive care unit of the Brigham and Women's Hospital testified that he was on duty when the victim arrived by ambulance. He stated that the victim was in a comatose state and exhibited no evidence of any brain function. There was a bruise over his left temple. There were no other cuts or lacerations on the victim. The injury caused bleeding into the left side of the brain; that part controls motor function. The victim remained in a coma for about five weeks. Throughout that period, he was not responsive to command, exhibited no spontaneous eye opening, and responded only to painful stimulus. The victim remained in the hospital for two months and then was transferred to a rehabilitation center where he stayed six months. The victim suffered, according to the doctor, "permanent brain injury." The Commonwealth also introduced in evidence the victim's hospital records. In addition, two photographs of the victim taken while he was in the hospital were shown to the jury.[4]

The defendant was charged with assault and battery, which consists of "the intentional, unprivileged, unjustified touching of another with such violence that bodily harm is likely to result." *Commonwealth* v. *Dixon*, 34 Mass. App. Ct. 653, 654 (1993). Medical testimony about the victim's injuries was relevant and admissible to establish that the de-

---

[4]Trial counsel objected on four occasions to the admission of some of the medical testimony. His objections were sustained twice.

fendant's assault on the victim was intentional and not accidental.

The testimony was also relevant for another reason. The victim testified that he had no memory of the events that took place on January 12, 1992; his last memory before that date was to the fall of 1990. Ordinarily, in an assault and battery case, the complainant gives his version of the incident; but here, the victim was not able to do so because of his condition. The Commonwealth could introduce evidence to demonstrate the reason for the victim's lack of memory of the incident.

The hospital records and photographs were relevant because they were of assistance in understanding the medical evidence. Any possible prejudice to the defendant was minimized by the fact that the prosecutor in her closing argument did not make any reference to the medical evidence at all.

3. *Ineffective assistance of counsel.* After the jury returned guilty verdicts and he was sentenced, the defendant (represented by new counsel) filed a motion for a new trial. His principal claim was that as a result of numerous alleged errors or failures on the part of trial counsel, the defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Several affidavits accompanied the motion.

The trial judge held a hearing on the motion. No evidence was presented,[5] and the judge, after listening to the argu-

_____

[5]On appeal, the defendant requests, among other things, that we remand the matter to the trial judge for an evidentiary hearing on the ineffectiveness of counsel issue.

According to the judge's memorandum in which he denied the defendant's motion for a new trial, the judge was prepared to hold an evidentiary hearing. However, two of the defendant's witnesses (the defendant's father and a New Jersey attorney) were not present. The judge denied the defendant's motion for a continuance, ruling that the absent witnesses' testimony would repeat what they stated in their affidavits. The third witness was to be the defendant, who was present. When the judge told defense counsel that he would take the defendant's testimony, defense counsel declined and rested on the defendant's affidavit.

ments of counsel, filed a memorandum of decision which contained his findings and rulings. He considered each claim of ineffectiveness of counsel and denied the defendant's motion. The defendant claims error.

In order to prevail on his claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and that his case was prejudiced by counsel's conduct because the conduct "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

The defendant argues that trial counsel failed to conduct a pretrial investigation, to file a motion for a bill of particulars, or to request any discovery from the prosecution. He also claims that trial counsel never interviewed any witnesses to the incidents.

"On a claim of failure to prepare and conduct an adequate defense, 'the defendant [can] make no headway in the absence of a showing that the fault probably resulted in forfeiture of a substantial defense.' " *Commonwealth* v. *Haley,* 413 Mass. 770, 777 (1992), quoting from *Commonwealth* v. *Saferian,* 366 Mass. at 98. The defendant has utterly failed to show, by affidavit or otherwise, how trial counsel's alleged shortcomings in this phase of the proceeding constituted ineffective assistance of counsel. In fact, the defendant has not offered any affidavit from any witness to support his claim that trial counsel made no attempt to contact them.

Trial counsel's failure to move for discovery or a bill of particulars likewise did not constitute ineffective assistance, especially in view of the defendant's failure to explain how he would have benefited from the filing of such papers. "Effective assistance is not measured by trial counsel's willingness to indulge every available procedure no matter how futile." *Commonwealth* v. *Brady,* 380 Mass. 44, 56 (1980).

---

We hold that in the circumstances the defendant waived an evidentiary hearing.

The defendant also contends that he received ineffective assistance of counsel during his trial and points out numerous shortcomings of counsel. Many of the alleged errors or failures of counsel concern counsel's tactics or strategic decisions made at trial. "In cases where tactical or strategic decisions of the defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful. . . . Rather than merely unreasonable, we require that challenged tactical judgments must be 'manifestly unreasonable.'" *Commonwealth* v. *White*, 409 Mass. 266, 272-273 (1991), quoting from *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). "Invariably the lawyer who refights a campaign on the written record finds ways to fight it better." *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61 (1985).

In order to analyze properly trial counsel's tactics, we must examine the choices that he was faced with in light of the evidence possessed by the Commonwealth. At the start of the trial, trial counsel was faced with enormous difficulties caused not by any inadequacy on his part but rather by the weakness in the facts concerning the defendant's actions on the night of the incidents. The evidence in the possession of the Commonwealth in regard to the culpability of the defendant was overwhelming. Another important factor that trial counsel had to consider was that the majority of the damaging evidence against the defendant came from acquaintances of the defendant — persons who did not even know the victim. It is apparent from the record that, in order to meet the formidable challenge that he faced, trial counsel decided to concede the severity of the victim's injuries and attempted to raise doubts about the defendant's guilt by pointing out various inconsistencies in the witnesses' testimony and arguing that their recollections were untrustworthy because of the amount of alcohol they may have consumed prior to the incidents in question. We now examine the defendant's claims regarding ineffective assistance of counsel during the trial.

a. *Failure to obtain expert review of medical evidence.*
The defendant claims that trial counsel was ineffective be-
cause he did not have a medical expert review the victim's
medical records to ascertain (1) the reason that the victim
was so severely injured, and (2) whether the victim was
drinking alcohol on the night in question.

According to the affidavit of the defendant's father that
accompanied the motion, trial counsel informed him that he
had a physician review the medical records. Apparently, trial
counsel made a tactical decision (the defendant does not ar-
gue otherwise) not to call a medical expert. That decision
was not "manifestly unreasonable."

The victim suffered extensive brain damage, yet the evi-
dence at trial was that the defendant struck him only once.
The defendant argues that it is highly unlikely that a single
blow could have caused such serious injuries. The fact that
the victim's severe injuries were caused by one blow may be
unusual but is hardly unique. See *Commonwealth* v. *Bas-
tarche*, 382 Mass. 86, 104 (1980) (death occurred when de-
fendant hit the victim with his fist and victim fell to the
ground); *Commonwealth* v. *Sheppard*, 404 Mass. 774, 775
(1989) (defendant hit victim in face, causing him to fall
back, hit his head and eventually die).

The victim's consumption of alcohol on the evening in
question was of no significance in the matter. Because of the
severity of his injuries, the victim did not give any statement
to the police after the incident and was not a viable witness
at trial. In these circumstances, it is highly improbable that
any information concerning the victim's consumption of alco-
hol would have aided the defendant, and, in fact, any such
information could have hurt him in the eyes of the jury.

b. *Failure to raise issue of self-defense.* We have ruled in
part 1 of this opinion that, on the evidence presented, trial
counsel was not ineffective in not requesting an instruction
on self-defense, and the judge did not commit error in not
instructing the jury, sua sponte, on the issue of self-defense.

The defendant also claims that trial counsel was ineffective
in not raising self-defense at the trial. The defendant claimed

in his posttrial affidavit that he was prepared to testify that he never struck Ball and that he hit the victim because he was "running directly at me. I thought that [the victim] was going to assault me and tried to punch him first, in self-defense."[6] In addition, the defendant submitted an affidavit from a doctor who stated that in his opinion "to a reasonable degree of medical certainty it would be virtually impossible for [the victim] to sustain the head injury he did the way in which [the eyewitnesses] described." Rather, the doctor opined that "for [the victim] to have sustained the type of injury he did, he had to be running toward [the defendant] at the moment of impact."

The judge rejected the defendant's theory of self-defense as an after-the-trial thought. The judge noted that the evidence demonstrated that in the hours and days following the incidents, although the defendant told several witnesses about his hitting the victim, not once did he state that the victim attacked him first or that he was defending himself. Moreover, the doctor's affidavit was contradicted by the evidence that the victim was struck on the left side of his head, in the temple area. We agree with the judge that even if there was failure on trial counsel's part, it "did not deprive the defendant of an 'otherwise available, substantial ground of defence.' " *Commonwealth* v. *Fionda*, 33 Mass. App. Ct. 316, 324 (1992), quoting from *Commonwealth* v. *Saferian*, 366 Mass. at 96.

c. *Failure to call defendant as a witness.* In his affidavit that accompanied his new trial motion, the defendant claimed that, although he wanted to testify at the trial, he did not because trial counsel had incorrectly advised him that his college disciplinary records would be used to impeach his credibility. The trial judge rejected the defendant's claim.

The defendant was well aware of his right to testify. Prior to trial, the defendant and his parents consulted a New

---

[6]The defendant's claim that his failure to testify was caused by incorrect legal advice furnished by trial counsel is addressed in the next section of this opinion.

Jersey attorney, not trial counsel, on the question whether the defendant should testify. That attorney advised them that she believed it would be beneficial for the defendant to testify. Although the defendant and his parents discussed the matter with trial counsel, neither the defendant nor his parents alerted the trial judge to any conflict with counsel. Contrast *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 387 (1987)("[t]here was no suggestion at the time of a disagreement between counsel and client") with *Commonwealth* v. *DeMinico*, 408 Mass. 230, 239 (1990) (transcript revealed defendant's desire to testify on four separate occasions). The judge, in rejecting the defendant's claim, labelled it an "after-the-fact invention." We agree.

d. *Other claims of ineffective assistance of counsel.* The defendant has raised a host of other claims concerning trial counsel's performance. We have reviewed each one in light of the evidence and the applicable law, and we reject them all.

The defendant has ignored the strong Commonwealth case and instead has offered after the trial theories and supposed facts to support his claim of ineffective assistance of counsel. We note that an accusation of ineffective assistance of counsel is a "grave [accusation] not lightly to be made or ignored. . . . But, the gravity of the charge requires more than the frenzied brandishing of a cardboard sword." *United States* v. *Kobrosky*, 711 F.2d 449, 457 (1st Cir. 1983). Here, the defendant has failed to meet its burden. The judge did not commit error in denying the defendant's motion for a new trial.     .

4. *Claim of error in sentencing.* The defendant argues that the judge improperly considered the evidence of the defendant's school disciplinary records as evidence of guilt of the crimes alleged in those records.

"A judge has considerable latitude . . . to determine the appropriate individualized sentence . . . . That sentence should reflect the judge's careful assessment of several goals: punishment, deterrence, protection of the public, and rehabilitation . . . . In making that assessment, the judge may consider many factors which would not be relevant at trial in-

cluding hearsay information about the defendant's character, behavior, and background. . . . Massachusetts decisions have recognized the relevance at sentencing of reliable evidence of the defendant's prior misconduct." *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92-93 (1993).

At the sentencing hearing, the judge did make a reference to the random nature of the defendant's assaults on people. In his written findings on the defendant's motion to revoke and revise, the judge explained his rationale for the sentence he imposed. The judge's explanation indicates that he did not use the information about the defendant's past misconduct impermissibly to punish him for crimes with which he had not been charged.

> *Judgments affirmed.*
> *Order denying motion for new*
>     *trial affirmed.*
> *Order denying motion to revise*
>     *and revoke sentences*
>     *affirmed.*