Commonwealth v. Smith.

COMMONWEALTH vs. MELVIN T. SMITH.

No. 00-P-1215.

Suffolk. October 16, 2002. - May 21, 2003.

Present: CYPHER, SMITH, & GRASSO, JJ.

*Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Firearms. Habitual Offender. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Required finding, Double jeopardy, Challenge to jurors, Conduct of prosecutor. *Evidence,* Statement of codefendant. *Words,* "Like offense."

Where, at the trial of indictments charging the defendant, inter alia, with unlawful possession of a firearm, the judge first allowed the defendant's motion (made after the Commonwealth rested) for a required finding of not guilty, but later that day (after the defense had rested but before closing argument) reconsidered the motion and decided to submit the charge to the jury, the defendant was not subjected to double jeopardy, because the judge's correction of her ruling did not require a second proceeding; further, the correction of the ruling did not violate the requirement of Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), that a judge decide a motion made at the close of the Commonwealth's evidence at the time the motion is made, because the Commonwealth did not introduce any additional evidence, and the defendant was provided the opportunity to reopen his case; moreover, the evidence on the firearm possession charge was not insufficient as a matter of law, nor was the defendant otherwise prejudiced by the ruling. [169-171]

At the trial of indictments charging the defendant, inter alia, with unlawful possession of a firearm (fourth offense), the judge did not err in relying on a Federal conviction for violating the "felon-in-possession" provisions of 18 U.S.C. § 922(g)(1) as one of the three previous firearms convictions, where the language of G. L. c. 269, § 10(*d*), did not prohibit the use of Federal convictions as predicate offenses, and where the offenses proscribed by both statutes were sufficiently alike to be considered "like offense[s]" for purposes of § 10(*d*). [172-173]

At a criminal trial, at which the Commonwealth objected to one codefendant's challenge of three of the four white female jurors, the judge's failure to follow the procedure articulated in *Commonwealth* v. *Burnett,* 418 Mass. 769, 770-771 (1994), did not create a substantial risk of a miscarriage of justice for the other defendant, where there was no showing of gender-based strikes of jurors. [173-175]

At a criminal trial, the defendant's claims of prosecutorial misconduct were unwarranted, where the prosecutor's reference during his opening state-

ment to a codefendant's having lied was not improper; where the solicitation of a certain statement on redirect examination of a police officer was not error; where the judge issued corrective instructions when witnesses made references to the defendant's criminal history; and where most of the evidence concerning details of the victim's injuries, recuperation, and suffering was admissible, and any error in the admission of evidence that stretched the limits of relevance was not prejudicial, because that evidence was cumulative of other, properly admitted evidence. [175-178]

The consideration by a jury at a criminal trial of hearsay statements made by one defendant, who did not testify, did not create a substantial risk of a miscarriage of justice with regard to the other defendant, where the second defendant pursued a trial strategy that depended upon the other defendant's statements; further, there was no error in the admission of these statements in evidence. [178-179]

This court found that there was no cumulative effect of alleged errors at a criminal trial that required reversal, where the one error that actually occurred did not prejudice the defendant. [179-180]

INDICTMENTS found and returned in the Superior Court Department on September 26, 1996, and October 8, 1998.

The cases were tried before *Elizabeth B. Donovan,* J., and a motion for a new trial, filed on February 14, 2001, was heard by her.

*David J. Nathanson,* Committee for Public Counsel Services, for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Melvin T. Smith, appeals from his convictions for assault with intent to murder, G. L. c. 265, § 18, assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A, and unlawful possession of a firearm, fourth offense, G. L. c. 269, § 10. The defendant also appeals from the denial of his motion for a new trial.

1. *Factual background.* A jury could have found the following facts. Codefendant Felicia Brown lived with her mother, stepfather, and two siblings in a three-story building at 33 Lawn Street in the Jamaica Plain section of Boston.[1] The Brown family occupied part of the second floor of the building and all of

---

[1]Brown was indicted on charges of being an accessory after the fact and perjury. The perjury indictment was severed. Brown was tried with the defendant on the accessory after the fact indictment and was acquitted. Following a separate trial, Brown was convicted on the perjury charge; the

the third floor, and rented part of the second floor and all of the first floor to tenants.[2]

On August 15, 1996, Christopher Robinson, Brown's cousin, spent the day sitting around the house, drinking alcohol and smoking marijuana and crack cocaine. At approximately 4:00 A.M., Robinson went from the third floor to the second floor downstairs to lie down. When he reached the bottom of the stairs, he saw Brown and the defendant in Brown's bedroom. The defendant was holding what appeared to be a .32 or .38 caliber pistol.

Robinson testified that as he descended from the third to the second floor, the defendant shot him three times. The defendant said to Brown, "let's go." Robinson said, "I know who you are, Melvin. Why you shoot me? Why you shoot me? I know who you are. Your name is Melvin."[3]

Brown and the defendant left the house. Robinson sought help from Brown's stepfather, who telephoned the police. The police and paramedics arrived within moments of each other.

While the paramedics attended to Robinson, Boston police Officer Wayne Clark asked Robinson who shot him. Robinson replied, "Melvin." Officer Clark asked for a last name, but Robinson said he did not know it. Officer Clark asked Robinson how he knew Melvin, and Robinson told him that Melvin was his cousin's boyfriend.

The shooting severely injured Robinson and destroyed his digestive tract. While in the hospital, Robinson selected a photograph of the defendant from a photographic array and identified the defendant as the person who shot him. At trial, Robinson identified the defendant as his assailant.

On August 25, 1996, Boston police Detective Tony Smith interviewed Brown in the presence of her mother. Brown said that she and the defendant had left because Robinson had been

conviction was later reversed by this court. *Commonwealth* v. *Brown*, 55 Mass. App. Ct. 440 (2002).

[2]Patrick Verdieu lived in the first floor apartment and Elaine Shaw lived in the second floor apartment.

[3]Immediately after the shooting, Robinson told the police that he did not know Melvin's last name. At trial, however, Robinson testified that Brown had said, "His last name is Smith," as she left the house.

acting crazy and "busting up" the house. Brown told Detective Smith that at the time of the shooting, the defendant was in his car and that she had just approached the house. She said that she heard the gunshots as she walked to the door, and that she and the defendant drove away, to "Tony's." Brown cried during the interview and explained that she was under a lot of pressure. She said that she and the defendant went to a friend's house to use the phone.

The theory of the defense was that Robinson was too intoxicated by drugs and alcohol to correctly identify his assailant and that one of the tenants in the building, Patrick Verdieu, had a motive and an opportunity to shoot him.

2. *Discussion.* a. *The motion for required finding of not guilty and double jeopardy.* After the Commonwealth rested, the defendant moved for a required finding of not guilty on the charge of unlawful possession of a firearm, arguing that because the Commonwealth had not introduced direct evidence of the gun's length, the Commonwealth had not proved that the gun met the statutory definition of a firearm. The judge allowed the motion. The allowance of the motion was not communicated to the jury, but it was recorded on the docket.

Later that day, after the defense had rested and before closing argument, the Commonwealth called the judge's attention to *Commonwealth* v. *Sperrazza*, 372 Mass. 667, 670 (1977), in which the Supreme Judicial Court held that testimony that a gun was a pistol or revolver was sufficient evidence to permit a firearm charge to go to the jury. In light of the case law, the trial judge concluded that the Commonwealth had, in fact, met the *Latimore*[4] standard because the Commonwealth had introduced testimony that the gun was a "pistol" and that it was a ".32 or .38," from which a jury could infer that the gun was less than sixteen inches. The judge decided to submit the charge to the jury. The docket reflects that the motion for required finding of not guilty had been reconsidered and was denied.

The defendant argues that the judge erred because once the motion for a required finding was allowed, jeopardy terminated as to that charge, and the decision could not be reversed regard-

---

[4]*Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

less of whether the judge was factually or legally in error in allowing the motion. The Commonwealth responds that because the charge was submitted to the same jury that had heard the evidence, the defendant was not subjected to double jeopardy.

Massachusetts common law and the Fifth Amendment to the United States Constitution protect criminal defendants from being placed twice in jeopardy in three circumstances: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. See *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969); *Luk* v. *Commonwealth*, 421 Mass. 415, 419 (1995). The defendant's argument implicates only the first circumstance, a second prosecution after acquittal. See *Commonwealth* v. *Lowder*, 432 Mass. 92, 103 (2000).

We conclude that double jeopardy protections were not violated in these circumstances because the judge's correction of her ruling did not require a second proceeding. See, e.g., *Commonwealth* v. *Haskell*, 438 Mass. 790, 792 (2003) (judge's power to reconsider his or her own decisions during pendency of case is firmly rooted in common law); *United States* v. *Washington*, 48 F.3d 73, 79 (2d Cir.), cert. denied, 515 U.S. 1151 (1995) (trial judge properly reversed entry of acquittal, after defense case began, where judge did so before informing jury); *United States* v. *Baggett*, 251 F.3d 1087, 1095 (6th Cir. 2001), cert. denied, 534 U.S. 1167 (2002) (conviction upheld where trial court entered acquittal but then submitted charge to jury because such reversal did not require retrial). See also *Price* v. *Vincent*, 538 U.S. 634, 641-643 (2003) (reasonable for State court to conclude that judge's comments were not sufficiently final to terminate jeopardy). Furthermore, "a defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact." *United States* v. *Wilson*, 420 U.S. 332, 345 (1975).

The defendant also argues that the correction was improper under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), because the rule requires that the judge decide a motion made at the close of the Commonwealth's evidence at the time the motion is

made.[5] The requirement of a prompt ruling "protects a defendant's right to insist that the Commonwealth present proof of every element of the crime with which he is charged before he decides whether to rest or to introduce proof in a contradiction or exoneration." *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 240 (1983). This protection was honored. The defendant has not suggested that the initial allowance of the motion affected his trial strategy with regard to the other charges. Moreover, the Commonwealth did not introduce any additional evidence, and the defendant was provided the opportunity to reopen his case.

Additionally, the defendant has not indicated how the requirement precludes a judge from correcting a ruling. Compare *Commonwealth* v. *Rice*, 216 Mass. 480, 482-83 (1914) (no violation of double jeopardy protections by District Court judge's withdrawal of finding of guilt and declination of jurisdiction because case had not been ended at time judge withdrew guilty finding); *Fine* v. *Commonwealth*, 312 Mass. 252, 258 (1942) (judge has power to alter or amend his decision on motion for new trial at any time during pendency of proceedings before him).

Furthermore, the evidence was not insufficient as matter of law. Compare *Commonwealth* v. *Ierardi*, 17 Mass. App. Ct. 297, 303 (1983) (no violation of right not to be put twice in jeopardy where judge indicated he would allow motion for required finding of not guilty but then permitted Commonwealth to reopen its case and enter stipulation in evidence). Contrast *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. 770, 779 (2001) (Commonwealth may not reopen its case when evidence is insufficient as matter of law).

Finally, the defendant was not otherwise prejudiced by the ruling. The jury were not aware that the judge had allowed the motion and the correction of the ruling was made before closing arguments. The judge did not err by correcting her ruling in these circumstances.

---

[5]Rule 25(a) of the Massachusetts Rules of Criminal Procedure provides, "If a defendant's motion for a required finding of not guilty is made at the close of the Commonwealth's evidence, *it shall be ruled upon at that time*" (emphasis added).

b. *Unlawful possession of a firearm (fourth offense).* A jury-waived trial was held on the portion of the indictment which alleged that the defendant was a four-time offender of the firearms law. See G. L. c. 269, § 10(*d*). The defendant claims that the judge erred by relying on a Federal conviction for violating the "felon-in-possession" provisions of 18 U.S.C. § 922(g)(1) as one of the three earlier firearms convictions.

Section 10(*d*) of G. L. c. 269 provides:

> "Whoever, after having been convicted of any of the offenses set forth in paragraph (*a*), (*b*) or (*c*) commits a like offense or any other of the said offenses, shall be punished . . . for a fourth such offense . . . ."

The defendant argues that the statute does not specifically permit convictions from other jurisdictions to serve as predicate offenses under § 10(*d*) and that, in fact, only another conviction for a violation of § 10(*d*) may be a "like offense." We disagree.

The language of G. L. c. 269, § 10(*d*), that conviction may be for a "like offense" does not prohibit Federal convictions from being used as predicate offenses. Contrast *Youngworth* v. *Commonwealth*, 436 Mass. 608, 611-612 (2002) (language in habitual offender statute requiring predicate convictions "in this or another state" precluded use of Federal conviction). Rather, the statute speaks of a "like offense."

We find no support for the defendant's claim that only another conviction for a violation of § 10(*d*) may be a "like offense." Had the Legislature intended such a requirement, it would have expressly stated so. *Commonwealth* v. *Brown*, 431 Mass. 772, 775 (2000).

The statute does not define a "like offense." Where a statutory term is undefined, we may interpret it "in accordance with its generally accepted plain meaning." *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002). The generally accepted, plain meaning of "like," in this context, means "the same or nearly the same." Webster's Third New Intl. Dictionary 1310 (1993). See *Commonwealth* v. *Corbett*, 422 Mass. 391, 396 (1996) (under plain and ordinary meaning of term "like offense[s]," prior convictions for operating under influence were

"like offense[s]" even though prior offenses were misdemeanors and third offense was felony, where elements remained same).

Although the elements of the Federal statute are not identical to the State statute, the offenses proscribed by both statutes are sufficiently alike to be considered "like offense[s]" for purposes of G. L. c. 269, § 10(*d*). Both statutes are concerned with keeping firearms out of the hands of those not legally entitled to possess them, in particular, people with felony convictions. See *Huddleston* v. *United States*, 415 U.S. 814, 824 (1974); *Barrett* v. *United States*, 423 U.S. 212, 220 (1976); *Commonwealth* v. *Moore*, 54 Mass. App. Ct. 334, 344 n.8 (2002) (intent of G. L. c. 269, § 10, is to protect public from potential danger incident to unlawful possession of such weapons). See also *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 805 n.8 (1999) (concluding that two statutes "are like statutes in that similar public policy considerations underlie both statutes"). Cf. *Commonwealth* v. *Alvarez*, 413 Mass. 224, 230 n.5 (1992) (suggesting that G. L. c. 94C, § 32J, is "like" Federal and other State school zone statutes). The Federal conviction properly served as a predicate offense in these circumstances.

c. *Peremptory challenges to three of the four white females.* During jury selection, codefendant Brown's attorney challenged three of the four white female jurors. See *Commonwealth* v. *Jordan*, 439 Mass. 47, 62 (2003) (concluding that art. 12 of Massachusetts Declaration of Rights proscribes use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in group delineated by race *and* gender). The defendant did not object, but the prosecutor did. The prosecutor asked the judge to find that Brown's attorney had engaged in a pattern of discriminatory strikes. The judge declined, stating, "I'm not going to [address the issue] at this time."

Now the defendant claims that the judge failed to follow the procedural requirements articulated in *Commonwealth* v. *Burnett*, 418 Mass. 769, 770-771 (1994). According to the defendant, the judge should have made an explicit finding regarding whether the required prima facie showing of impropriety had been made. *Id.* at 771. Although the judge did not follow the procedure established by the Supreme Judicial

Court, procedural error is not a per se ground for reversal. *Commonwealth* v. *Calderon*, 431 Mass. 21, 27 (2000). The defendant failed to object. If there was error, our review is limited to whether there exists a substantial risk of a miscarriage of justice.[6] *Commonwealth* v. *Randolph*, 438 Mass. 290, 294 (2002). We conclude that the judge's statement constituted an implicit finding that no discriminatory pattern of peremptory challenges had been demonstrated. If the judge's finding is supported by the record, we afford it substantial deference. *Commonwealth* v. *Cavotta*, 48 Mass. App. Ct. 636, 638 (2000).

There was no showing of gender-based strikes. After three women had been struck from the jury, two of the three women were replaced with women; therefore, the net effect was a reduction in the number of women on the jury by just one. See *Commonwealth* v. *Hyatt*, 409 Mass. 689, 692 (1991) (where two white jurors were replaced with white jurors, there was no showing of race-based strikes); *Commonwealth* v. *LeClair*, 429 Mass. 313, 320-321 (1999) (judge acted within his discretion in finding no prima facie case of discriminatory challenges where replacement venire contained roughly equal numbers of men and women and prosecutor struck eight of eleven men and no women). In the present case, there were five women on the deliberating jury.

We are unable to discern from the record the race of the female jurors in the venire or on the deliberating jury. See *Commonwealth* v. *Arriaga*, 438 Mass. 556, 571-572 (2003). In these circumstances, where the record is silent as to the racial composition of the venire and the jury, we cannot conclude that the defendant has met his burden of overcoming the presumption that the peremptory challenges were proper. See *Com-*

---

[6]We reject the defendant's attempt to derive a more favorable standard of review based on the Commonwealth's objection to the peremptory challenges. We also reject the defendant's attempt, based on the Commonwealth's unsuccessful objection at trial to Brown's exercise of her peremptory challenges, to preclude the Commonwealth from arguing on appeal that Brown's exercise of her peremptory challenges was proper. The defendant has not substantiated either argument with relevant authority. The defendant suggests that his counsel's failure to object constituted ineffective assistance of counsel. For purposes of this appeal, we equate the substantial risk standard and the ineffective assistance of counsel standard. *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002).

*monwealth* v. *Burnett*, 418 Mass. at 770 (presumption of correctness ordinarily attends exercise of peremptory challenges).

d. *Prosecutorial misconduct.* The defendant argues that errors made by the prosecutor established a pattern of intentional misconduct which infected the trial with prejudicial error. We have examined each claim and conclude that the allegations of prosecutorial misconduct are unwarranted.

i. *The prosecutor's opening statement.* Brown was tried with the defendant on charges of being an accessory after the fact. In his opening, the prosecutor explained to the jury the Commonwealth's theory of the case against both defendants. The prosecutor told the jury that the Commonwealth had to prove that Brown "did something to assist Mr. Smith in avoiding detection, capture, trial, or punishment. And in this case, it's the Commonwealth's allegation that she lied." The defendant moved for a mistrial, which was denied. The defendant argues that because the judge allowed the defendant's motion to sever Brown's perjury charge, the prosecutor should not have been permitted to state in opening that it was the Commonwealth's position that Brown lied to the police.[7]

The statement was not improper. "Generally, a prosecutor in a criminal action may state anything in his opening argument that he expects to be able to prove by evidence." *Commonwealth* v. *Cohen*, 412 Mass. 375, 382 (1992). This general rule also permits the prosecutor to state those facts which would have to be proved by inferences. *Commonwealth* v. *Johnson*, 429 Mass. 745, 748 (1999). Whether Brown had lied was a central issue in the case, and relevant to the charge of accessory after the fact.

ii. *Testimony of Detective Smith about the grand jury.* During cross-examination, defense counsel elicited from Detective Smith that he had gone to 33 Lawn Street to serve grand jury subpoenas even though he had not attempted to interview Patrick Verdieu or Elaine Shaw. During redirect examination, the prosecutor asked Detective Smith whether Verdieu and Shaw had testified before the grand jury. Detective Smith answered that they had.

The defendant objected, but the record does not establish the

---

[7]Brown told the police that the defendant was outside the house in a car when Robinson was shot.

basis of the defendant's objection. An objection must be sufficient to make the grounds clear to the judge. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 636 & nn.1 & 2 (1997); *Commonwealth* v. *Houghtlin*, 16 Mass. App. Ct. 691, 695 (1983). Our review is limited, if there is error, to whether any error created a substantial risk of a miscarriage of justice.

The defendant argues that Detective Smith's testimony was hearsay because Detective Smith had no personal knowledge of whether either Verdieu or Shaw testified before the grand jury. The defendant further argues that such hearsay testimony impermissibly suggested that the prosecutor possessed information against the defendant which was not in evidence and that the erroneous admission of the testimony concerning Verdieu effectively left the defendant without a defense: that Verdieu was the shooter. See *Commonwealth* v. *Loguidice*, 420 Mass. 453, 455 (1995).

The defendant's challenge on grounds that the testimony was "hearsay" is not persuasive. The defendant's point appears to be that since Detective Smith could not be present in the grand jury room when Verdieu and Shaw appeared, he could only know whether Shaw and Verdieu testified based on the statements of another. The Commonwealth was entitled to rebut the inference suggested by the defendant that the police investigation was inadequate or that they had not diligently pursued the investigation. See *Commonwealth* v. *Carrion*, 407 Mass. 263, 274-275 (1990). There was no error, but if there were it would not rise to the level of a substantial risk of a miscarriage of justice.

iii. *References to the defendant's criminal history.* The defendant claims that Detective Smith's reference to the defendant's photograph as being from a booking sheet and another witness's references to the defendant's photograph as a "mugshot" constituted prejudicial error and that the judge erred in not granting his motions for a mistrial. Instead, on each occasion, the judge promptly instructed the jury to disregard the reference. We conclude that the witnesses' missteps did not require a mistrial and that the judge's instructions to the jury to

disregard the references were sufficient in these circumstances.[8] See *Commonwealth* v. *Robertson*, 408 Mass. 747, 753 (1990); *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 781 (2000); *Commonwealth* v. *Lanning*, 32 Mass. App. Ct. 279, 284 (1992). In addition, the judge twice instructed the jury to draw no inferences from the fact that the police had the defendant's photograph in their possession.

iv. *Details about Robinson's injuries and recuperation and reference to his suffering.* The defendant argues that introduction of evidence concerning the extent of Robinson's injuries and medical complications was substantially more unfairly prejudicial than probative and that the Commonwealth unnecessarily referred to Robinson's suffering in closing argument. The defendant objected to the admission of the medical testimony, so we review to determine whether any error was prejudicial. The defendant did not, however, object to the admission of the medical records or to the closing argument, so our review is limited to whether any error created a substantial risk of a miscarriage of justice.

The Commonwealth argues that the judge did not err in admitting such evidence because the evidence was (1) probative of the defendant's intent to kill; (2) relevant because one of the defense theories was that Robinson had changed his story to conform to his injuries; and (3) relevant to establish Robinson's physical condition at the time he identified the defendant's photograph.

We agree that the testimony concerning the location of Robinson's wounds and the extensive organ damage he suffered was admissible because it was probative of the issue whether the assailant intended to kill Robinson. See *Commonwealth* v. *Gill*, 37 Mass. App. Ct. 457, 463-464 (1994). The testimony concerning the subsequent treatment and medical complications, including life-threatening infections, was not relevant on this point. It was, however, relevant as it bore on Robinson's ability to communicate with the police and identify the defendant while in the hospital.

[8]The jury were aware that the witnesses were not shown the photographs until several weeks after the defendant had been arrested for the crime. Therefore, the fact that the defendant had been through the booking process or that "mugshots" of the defendant existed would not prejudice the defendant.

The extensive and detailed medical testimony concerning Robinson's need for a liver transplant to avoid death from complications due to the destruction of his digestive system stretched the limits of relevance. Any error in its admission was not prejudicial, however, as it was cumulative of the other properly admitted evidence of Robinson's injuries and treatment, including Robinson's appearance before the jury. *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. 562, 566-567 (1995).

The medical records were relevant because they assisted the jury in understanding the medical evidence. See *Commonwealth* v. *McDougal*, 2 Mass. App. Ct. 820, 821 (1974); *Commonwealth* v. *Gill*, 37 Mass. App. Ct. at 464.

The reference in closing argument to Robinson's suffering was but one sentence in an otherwise proper argument. In the context of the entire argument, the defendant's concession that Robinson suffered egregiously, and the lack of an objection, the comment did not create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Duguay*, 430 Mass. 397, 403-404 (1999).

e. *Alleged* Bruton *violations.* The defendant claims that his confrontation rights were abridged by the introduction of certain statements of Brown, in violation of *Bruton* v. *United States*, 391 U.S. 123, 137 (1968). "According to *Bruton*, severance is constitutionally required where: a codefendant's extrajudicial statements are offered in evidence at a joint trial; the statements are 'clearly inadmissible' as against the defendant; the codefendant does not testify; and finally, there is a substantial possibility that, in determining the defendant's guilt, the jury relied on the codefendant's 'powerfully incriminating extrajudicial statements' notwithstanding any limiting instructions from the judge." *Commonwealth* v. *Adams*, 416 Mass. 55, 58 (1993), quoting from *Commonwealth* v. *Pontes*, 402 Mass. 311, 314 (1988).

Here, the defendant does not argue that his trial should have been severed from Brown's trial; rather, he argues that certain statements should not have been admitted. This is a difficult argument for the defendant as he pursued a trial strategy which depended on Brown's statements. In fact, he moved to sever only the perjury charge and stated that "Felicia Brown is [the

defendant's] best defense."[9] The defendant did not object to the admission of most of the testimony concerning Brown's statements to Detective Smith or request a limiting instruction. "In reviewing the defendant's conviction, we will 'not disregard the theory of law on which the parties proceeded at trial.' " *Commonwealth* v. *Silva*, 431 Mass. 401, 405 (2000), quoting from *Commonwealth* v. *Monteagudo*, 427 Mass. 484, 487 (1998). Considering the defendant's trial strategy, the jury's consideration of the hearsay testimony[10] did not create a substantial risk of a miscarriage of justice.[11] *Commonwealth* v. *Silva*, 431 Mass. at 406.

In looking at each statement, we hold that no error occurred, although for varying reasons depending on the statement. See *Commonwealth* v. *Devlin*, 365 Mass. 149, 159 (1974) (statement admissible against defendant as statement of joint venturer); *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990) (remarks made during closing argument are viewed in context of entire argument and in light of judge's instructions to jury and evidence at trial); *Commonwealth* v. *Ivy*, 55 Mass. App. Ct. 851, 857-858 (2002) (to exclude such probative statements under strictures of confrontation clause of Sixth Amendment to United States Constitution would be height of wrongheadedness, given that confrontation clause has as basic purpose promotion of integrity of fact-finding process). See also *Bruton* v. *United States*, 391 U.S. at 135 (statement not "powerfully incriminating extrajudicial statement[]").

f. *Cumulative error.* The defendant argues that the alleged er-

---

[9]For a discussion of some circumstances in which a defendant has waived his right to confront witnesses under the Sixth Amendment to the United States Constitution, see *United States* v. *Stephens*, 609 F.2d 230, 232-233 (5th Cir. 1980); *Brown* v. *Artuz*, 124 F.3d 73, 77 (2d Cir. 1997), cert. denied, 522 U.S. 1128 (1998); *United States* v. *Reveles*, 190 F.3d 678, 683 (5th Cir. 1999); *United States* v. *Plitman*, 194 F.3d 59, 64 (2d Cir. 1999).

[10]The alleged hearsay statements are Brown's statement to police that she was under pressure; the prosecutor's reference in closing argument to Brown's grand jury testimony; and two witnesses' testimony of Brown's statements to them.

[11]The standard of review is substantial risk of a miscarriage of justice because the defendant either did not object below to the testimony being admitted or, when an objection was raised, did not state any constitutional grounds. See *Commonwealth* v. *Fowler*, 431 Mass. 30, 41 n.19 (2000).

rors created a "cumulative" effect requiring reversal. See *Commonwealth* v. *Smith*, 387 Mass. 900, 912 (1983). As we have concluded that the one error (in the admission of medical testimony regarding Robinson's need for a liver transplant) did not prejudice the defendant, we reject the defendant's claim.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*