COMMONWEALTH *vs.* OWEN PREVOST.

No. 96-P-1087.

Plymouth. January 8, 1998. - March 11, 1998.

Present: PERRETTA, GILLERMAN, & LAURENCE, JJ.

*Search and Seizure,* Threshold police inquiry. *Constitutional Law,* Search and seizure. *Firearms.*

In the circumstances of a lawful traffic stop of a vehicle proceeding the wrong way on a one-way street, the movements of a passenger in the vehicle, who bent down out of sight after the car was pulled over and then struggled to put on an overcoat, justified the police officer's concern for his own safety and his subsequent actions in opening the passenger door and ordering the passenger to open his coat: the officer's seizure of a handgun then visible in outline in the passenger's pants was lawful, and the weapon was properly admitted in evidence. [400-402]

A handgun did not lose its character as a "firearm" within the meaning of G. L. c. 140, § 121, merely because of a broken firing pin which, although necessary to its operation, was easily replaceable. [402-403]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on October 5, 1994.

A pretrial motion to suppress evidence was heard by *Deborah A. Dunn,* J., and the case was heard by *Daniel B. Winslow,* J.

*Pedro A. Jaile* for the defendant.

*Mary E. Mullaney,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. Following the denial of the defendant's motion to suppress and a one-day bench trial, the defendant was found guilty of charges of violating G. L. c. 269, § 10(*a*) (carrying a firearm without a license), and G. L. c. 269, § 10(*h*) (possession of a firearm without a firearm identification card). The defendant

appeals from the denial of his motion to suppress, and from the denial of his motion for a required finding of not guilty.[1]

Findings of fact were not made by either the judge who heard the motion to suppress or the judge who conducted the trial. However, the reasons for their decisions are evident from the record. See *Commonwealth* v. *Raedy*, 24 Mass. App. Ct. 648, 649 (1987), and cases cited. We summarize the Commonwealth's evidence which the judges implicitly credited.

1. *The motion to suppress.* On the evening in question, Trooper Coleman (the only witness at the motion to suppress hearing) was in the back seat of an unmarked cruiser; in the front seat were two Brockton police officers. At about 6:30 P.M., the officers saw a motor vehicle proceeding the wrong way down a one-way street. The officers activated their blue lights and siren, and the driver pulled over. With the motor vehicle in a stopped position at the side of the road, and the police cruiser parked behind it, the officers observed the operator of the vehicle and the front seat passenger (the defendant in this case) make numerous uncommon body movements. The defendant moved his shoulders and his arms, and then bent over and was briefly out of sight. These movements precipitated the concern of the police officers for their safety.

One officer then approached the driver's side, and Coleman approached the passenger side of the stopped vehicle. As Coleman did so, the defendant was putting his coat on; he was trying to insert his left arm into the sleeve. These movements — which the officers found to be unusual when a vehicle is merely pulled over — made Coleman additionally apprehensive.

Coleman, now at the passenger side of the car with the defendant's window half open, told the defendant to stop moving and to stop trying to put on his coat. Coleman gave these instructions because it was his impression that the defendant was trying to conceal something. Coleman then inquired why

---

[1]The defendant's first argument is that the sentence imposed was an illegal sentence. The argument is based on an error in the transcript provided by the Commonwealth. In fact, the trial judge had listened to the tape of the proceedings (i.e., his own voice), recognized that there was an error in the record regarding sentencing, and immediately corrected the error. Subsequently he allowed a motion correcting the record of sentencing. There was no illegal sentence, and the judge's allowance of the motion to correct the record put an end to the matter. See Mass.R.A.P. 8(e), as amended, 378 Mass. 932 (1979) (disputes regarding the record are "settled" by the court in which the trial took place).

the defendant was attempting to put on his coat when the vehicle was being pulled over, and the defendant, without further explanation, acknowledged that he should not have done that.

Coleman then opened the door of the vehicle and asked the defendant to remove his coat from the area of his leg and to expose the area of his waist. Coleman made these requests out of concern for his own safety. The defendant complied, whereupon Coleman saw what appeared to be the outline of a small handgun inside the defendant's pants. Coleman reached down, felt the outline of a handgun, put his left hand on top of the weapon, drew his own weapon, and said, "Don't move." The defendant raised his hands, and said, "You got me. I give up." One of the Brockton officers then joined Coleman, and Coleman seized the gun and put it inside his own pocket. The defendant was then taken from the vehicle and placed under arrest.[2] Meanwhile, the driver had been placed under arrest for operating without a license.

The defendant does not dispute the legitimacy of the stop of the automobile. The sole issue is whether the search of the defendant, a passenger, was justified.

We start with the recognition that there is no automatic right to search a companion of a person validly arrested, see *Commonwealth* v. *Wing Ng*, 420 Mass. 236, 237-238 (1995), and that that principle has been extended to benefit a person who is merely present in a suspected car. Such a person does not lose "immunities from search of his person to which he would otherwise be entitled." *United States* v. *Di Re*, 332 U.S. 581, 587 (1948), cited in *Commonwealth* v. *Wing Ng*, 420 Mass. at 238 n.2.[3,4] However, in the case before us, each step in the progress of the police inquiry, culminating in the search of the defendant, was justified by the circumstances confronting the police.

---

[2]The defendant made no claim that he had a license to carry the weapon, or a firearms identification card to possess the weapon. See *Commonwealth* v. *Tuitt*, 393 Mass. 801, 810 (1985) (" 'the burden is on the defendant' to come forward with evidence of a license").

[3]Since, at some point not identified in the record, the operator of the vehicle was unable to produce a license to operate, we put to one side cases such as *Commonwealth* v. *Torres*, 424 Mass. 153 (1997), which hold that police inquiries attendant upon routine traffic stops must end with the production of a valid license and registration. *Id.* at 158.

[4]Contrast *Commonwealth* v. *Santana*, 420 Mass. 205, 212 (1995) ("When police are justified in stopping an automobile, they may, for their safety and the safety of the public, order the occupants to exit the automobile").

After the motor vehicle was properly stopped, and before the police left the cruiser, the police saw uncommon movements within the vehicle. Most particularly, the police observed the defendant bend over to the point where he was briefly out of sight. In the context of a simple traffic stop for proceeding the wrong way on a one-way street, the defendant's body movements, together with the unexpected and uncommon act of bending over to the point of being out of sight of the police, were furtive movements requiring further inquiry in the context of a justifiable concern for the safety of the officers. See *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 315 (1992) (one factor justifying the search was the fact that the defendant "bent forward, as if to place something on the floor, as the trooper approached the car"); *Commonwealth* v. *Heughan*, 40 Mass. App. Ct. 102, 104 (1996) (in deciding what next to do, the police could consider "the bending movement of the rear-seat passenger as the police pulled the Toyota over, a motion that reasonably could be taken as placing or retrieving an object beneath the driver's seat"); *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 471 (1996) (furtive movements invite further inquiry). See also *Commonwealth* v. *Vanderlinde*, 27 Mass. App. Ct. 1103, 1104 (1989) (police justified in fearing that the suspect's purpose in reaching into the "well" between the driver's seat and that of the passenger "might be to obtain a gun").

When, as Trooper Coleman approached the passenger side of the vehicle, he saw the defendant struggling to put on his overcoat, the trooper was additionally apprehensive that the defendant might be concealing a weapon. That apprehension was heightened when the defendant gave no explanation for putting on his coat after being stopped for a traffic violation. Coleman could take into account "the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 130 (1984), cert. denied, 469 U.S. 1193 (1985). Coleman had to consider the real possibility that the defendant had bent forward to conceal or retrieve a weapon, and he was not obliged to gamble with his own safety in deciding what to do. *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992) (police are not required to gamble with their own safety). See *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528-529 (1995) ("Courts cannot be oblivious to the recent escalation in the numbers of incidents

reported wherein police officers have been killed or wounded while performing routine traffic functions.").

These circumstances, in the aggregate, were sufficient to justify Coleman's concern for his safety and his decision to open the car door. When Coleman opened the car door, the search began,[5,6] but by pursuing the inquiry, as he was obliged to do, Coleman had chosen the least intrusive manner with which to resolve the problem, meanwhile taking the steps necessary to protect the safety of the three officers. See *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968) (police may undertake a reasonable search for weapons when a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger"); *Commonwealth* v. *Sumerlin*, 393 Mass. at 129-130.

With the defendant now in plain view, the trooper asked the defendant to open his coat so the trooper could satisfy himself that the defendant was not concealing anything. This limited order — rather than an immediate frisk — again was the least intrusive means of pursuing the inquiry. See *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990) ("The degree of intrusiveness that is permitted is that which is 'proportional to the degree of suspicion that prompted the intrusion' "). The defendant complied, revealing the outline of a handgun in his right leg area. Coleman, now with every good reason to be fearful of the armed person in front of him, drew his own weapon and told the defendant not to move. Then, with the back-up of one of the other officers, Coleman seized the defendant's handgun.

The defendant's motion to suppress the weapon was properly denied.

2. *The motion for a required finding.* The handgun seized by Coleman, the defendant argues, did not constitute a "firearm" as defined in G. L. c. 140, § 121, because the handgun, with a broken firing pin, was incapable of discharging a bullet. The Commonwealth's evidence showed that replacing the broken

---

[5]In some circumstances, the opening of a car door may not require any justification, as was suggested in *Commonwealth* v. *Leonard*, 422 Mass. 504, 508-509, cert. denied, 519 U.S. 877 (1996). But in *Leonard*, as the court noted, there was in fact ample justification in the apparent illness of an unresponsive driver, *ibid.*, a justification rooted in the so-called community caretaking function. The *Leonard* case is discussed more fully in *Commonwealth* v. *Canavan*, 40 Mass. App. Ct. 642, 647-649 (1996).

[6]The defendant had effectively been stopped when the vehicle in which he was riding was stopped by the police.

firing pin with a new one was a "simple task," requiring, in the opinion of an expert witness, only ten or fifteen minutes. The judge credited this testimony, and found that "a slight repair, replacement, or adjustment could make this weapon effective as a firearm. . . ." On that basis, the judge found sufficient facts to warrant a finding of guilty, impliedly denying the defendant's motion for a required finding of not guilty. There was no error. See *Commonwealth* v. *Bartholomew*, 326 Mass. 218, 220 (1950) (The court held that an easily replaceable firing pin did not destroy the character of the weapon or a machine gun. "While it may be conceded that a weapon designed for firing projectiles may be so defective or damaged that it has lost its initial character as a firearm, [citation omitted], this character is not lost when a relatively slight repair, replacement, or adjustment will make it an effective weapon.").

*Judgments affirmed.*