Following a jury trial in the Superior Court, the defendant, Janito Decarvalho, was convicted of unlawful possession of a shotgun, unlawful possession of ammunition, and three drug-related offenses.[2] On appeal, he contends, among other things: (1) there was insufficient evidence to support his conviction of unlawful possession of a shotgun; (2) the judge should have allowed his motion for a new trial; (3) the judge erred in denying his motion to suppress evidence; and (4) the judge made improper remarks at sentencing. We affirm.
Background. The jury could have found the following facts. In the early morning hours of September 6, 2013, Brockton police officers, with assistance from the Massachusetts State police, executed a search warrant at 555 Main Street, apartment 2N, in Brockton. Upon entry, the officers discovered and detained three individuals, including the defendant. After the individuals were removed from the apartment and informed of their Miranda rights, the officers conducted a search. Their efforts uncovered, among other things, numerous cellular telephones, approximately $700 in cash, several bags of cocaine, 170 oxycodone pills, four Suboxone pills, six rounds of .32 caliber ammunition, four shotgun shells, and a shotgun. One of the troopers asked the defendant "who the shotgun belonged to." The defendant responded that "it was a one bedroom apartment and ... the other two kids that were there that morning don't live there. They're just friends and they come by to hang out and play video games and stuff like that." The defendant was later arrested.
The shotgun was eventually transported to the State police crime laboratory where it was examined and test-fired by Sergeant Stephen Walsh. The weapon was a twelve-gauge shotgun and, as found, was in two pieces. Specifically, the pistol grip part of the stock was separated from the part that fires the ammunition.[3] Moreover, the muzzle was cracked, both the muzzle and the barrel were rusted, and the safety was rusted into the firing position. To test-fire the weapon, Sergeant Walsh fired a "prime cartridge." He explained that this entailed using twelve-gauge ammunition, emptying out the gunpowder and the projectile, loading the part with the primer into the weapon's chamber, and pulling the trigger. When he did so, the trigger struck the primer and made a popping sound, which indicated to the officer that the gun is capable of firing.[4] After conducting the test-fire, Sergeant Walsh was left with "a cut down shot shell with a spent primer."
Sergeant Walsh never fired a live shell due to the gun's condition. He was concerned that, without a stock, the recoil generated by live ammunition could hurt his hand.[5] Nevertheless, he noted that a stock was unnecessary to fire this particular weapon. Moreover, at the close of redirect examination, he specifically testified that the gun's rusted barrel did not alter his conclusion that, in its current condition, it is capable of firing a live cartridge.
Discussion. 1. Motion for required finding. The defendant argues that the evidence at trial was insufficient to establish that the weapon found during the execution of the search warrant was a shotgun within the meaning of G. L. c. 140, § 121.[6] Specifically, he contends that the Commonwealth failed to show that the weapon was capable of discharging a shot. We disagree.
In reviewing the denial of a motion for required finding of not guilty, we must "determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient ... to permit the jury to infer the existence of the essential elements of the crime charged." Commonwealth v. Chhim, 447 Mass. 370, 376-377 (2006).
Here, Sergeant Walsh testified that (1) he successfully fired a prime cartridge; (2) the gun is, therefore, capable of firing a bullet; and (3) the weapon's over-all condition did not alter that conclusion. Walsh was a qualified firearms expert with sixteen years of experience in the firearms identification unit of the Massachusetts State police at the time of trial. He test-fired the shotgun without the need to make any prior repairs thereto. He used a primer cartridge rather than live ammunition to avoid potential injury to his hand. Firing the primer, in Sergeant Walsh's expert opinion based on his training and experience, is a "standard practice" for testing of weapons that may be unsafe. Viewed in the light most favorable to the Commonwealth, this expert testimony was sufficient to submit the question of operability to the jury.[7] See Commonwealth v. Raedy, 24 Mass. App. Ct. 648, 654 (1987) (expert testimony that gun could be discharged once by "inverting it" deemed sufficient to survive motion for required finding). See also Commonwealth v. Prevost, 44 Mass. App. Ct. 398, 402-403 (1998) (expert testimony that gun with broken firing pin could be easily repaired sufficient to survive motion for required finding). In addition, the ballistics certificate indicating that the weapon was a shotgun was admitted in evidence as an exhibit. Such evidence, combined with Sergeant Walsh's expert testimony and his test-firing of the shotgun, described supra, was sufficient to submit the count to the jury. Contrast Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 3-4 (1997) (ballistics certificate along with test firing and testimony of persons familiar with guns, are types of evidence admissible to prove capacity to discharge bullet).
2. Motion for new trial. The defendant next argues that his motion for new trial was incorrectly denied because the judge's failure to provide a limiting instruction as to the search warrant evidence constituted prejudicial error. We disagree.
By way of background, the defendant filed a pretrial motion in limine to exclude (1) any evidence that a search warrant existed for the apartment, or (2) that the defendant was the target of the warrant. The judge allowed the motion as to the latter, but otherwise denied it. Prior to trial, the defendant also filed a proposed jury instruction on the search warrant evidence.[8] Thereafter, various police witnesses mentioned the search warrant to explain the officers' presence at the apartment. The prosecutor also referenced the search warrant in his opening statement and closing argument. The defendant did not object thereto. In his final charge, the judge did not provide an instruction on the search warrant evidence. During deliberations, the jury asked the following question: "is the execution of the search warrant part of the evidence." However, before the judge could provide an answer, the jury returned a verdict. The defendant subsequently filed a motion for new trial, which was denied.[9]
On appeal, the defendant essentially argues that the motion for new trial was incorrectly denied because (1) the judge's failure to provide the instruction was error; and (2) the jury's question indicates that such error was prejudicial. We review the order denying a motion for new trial for "significant error of law or other abuse of discretion," and will not reverse "unless [the denial] is manifestly unjust, or unless the trial was infected with prejudicial constitutional error." Commonwealth v. Acevedo, 446 Mass. 435, 441 (2006) (citations omitted). Given that we discern no underlying error in the judge's instructions,[10] as discussed infra, there could have been no abuse of discretion in denying the motion for new trial. See Commonwealth v. Sarmanian, 426 Mass. App. Ct. 405, 408 (1998).
It is well established that "[t]rial judges have 'considerable discretion in framing jury instructions.' " Commonwealth v. Kelly, 470 Mass. 682, 688 (2015) (citation omitted). Moreover, "[s]ome testimony about the search warrant application procedure is generally permissible to explain to a jury why the police were present at the scene of a search and why they did certain things at the scene." Commonwealth v. Ferrara, 31 Mass. App. Ct. 648, 651 (1991). In the instant case, the judge limited the scope of the search warrant evidence to this permissible purpose and, therefore, was well within his discretion in declining to instruct the jury on this issue. See Kelly, supra. Even assuming that such an instruction was warranted, the defendant did not object at trial to witness testimony or to the prosecutor's references in her opening statement and closing argument regarding the existence of the search warrant, and the references to the search warrant at trial were limited in scope. The judge did not abuse his considerable discretion in denying the motion for new trial. Contrast Commonwealth v. Saponzik, 28 Mass. App. Ct. 236, 245-247 (1990) (error to admit in evidence details of warrant procedure and approval of search warrant, particularly where compounded by prosecutor's subsequent closing argument to effect that police entrance into motel room was not accidental because court magistrate had found probable cause to believe officer's conclusions).
3. Motion to suppress. The defendant next claims error in the denial of his motion to suppress evidence obtained from the apartment. He argues that the affidavit in support of the search warrant application, which relied on information provided by a confidential informant (CI), was insufficient to support a finding of probable cause. We disagree.
We review de novo a finding of probable cause based on a search warrant affidavit, Commonwealth v. Tapia, 463 Mass. 721, 725 (2012), confining our inquiry to the "four corners" of the affidavit. Commonwealth v. Ilges, 64 Mass. App. Ct. 503, 508 (2005). An affidavit based on information from a CI must satisfy the two-pronged Aguilar-Spinelli test,[11] which requires that the judge be provided with underlying facts establishing the informant's (1) basis of knowledge and (2) veracity. See Commonwealth v. Upton, 394 Mass. 363, 374-375 (1985). Here, there was ample evidence presented in the affidavit to satisfy both prongs.
A. Basis of knowledge. According to the affidavit, the CI personally purchased drugs at the apartment from the defendant and his two associates, and observed all three individuals selling drugs to others at the apartment. This firsthand discovery of information through personal observation was sufficient to satisfy the basis of knowledge prong. See Commonwealth v. Montanez, 410 Mass. 290, 299-300 (1991) ; Commonwealth v. Alvarez, 422 Mass. 198, 205 (1996).
B. Veracity. The affidavit also explained that (1) the CI had provided two tips on prior occasions, each of which led to an arrest and the seizure of drugs;[12] and (2) during the investigation in this case, the CI carried out two supervised controlled buys at the apartment. This information was more than enough to satisfy the veracity prong. See Commonwealth v. Perez-Baez, 410 Mass. 43, 46 (1991) (prior tip leading to arrest and seizure of drugs sufficient to satisfy veracity prong); Commonwealth v. Villella, 39 Mass. App. Ct. 426, 427 (1995) ("It is well settled that a controlled buy supervised by police provides probable cause to issue a search warrant").
4. Sentencing. Finally, the defendant argues that the judge relied on improper factors at sentencing. Specifically, he contends that the judge's comments demonstrate that he predicated punishment of the defendant on (1) the circumstances of the opioid epidemic unrelated to his conduct; and (2) the judge's own personal beliefs. On the record before us, we disagree.
Judges have "considerable latitude" in fashioning appropriate individualized sentences. Commonwealth v. Goodwin, 414 Mass. 88, 92 (1993). In completing this task, judges may consider goals such as "punishment, deterrence, protection of the public, and rehabilitation" as well as "many factors which would not be relevant at trial including hearsay information about the defendant's character, behavior, and background." Ibid. In the present case, we are confident that the sentence was crafted solely based on these permissible determinants. The remarks in question were as follows:
"I appreciate the fact that he doesn't have much of a criminal record. I do not overlook the fact, however, that he was peddling Oxycodone and cocaine out of that apartment. And had a shotgun. The evidence was clear that he was a drug dealer. The simple fact of the matter is, you know, 1,300 people have died in Massachusetts last year due to opioid addiction, 27 of them here in Brockton. Thousands of babies are born each year with drugs in their system. He's part of that problem. All right? He was part of that problem, a big part of it, in my view."
The judge's statements outlining the specific charges of which the defendant was convicted, combined with the remark that he was "part" of a larger problem, reflect the judge's awareness that the defendant could be punished only for his own actions. Contrast Commonwealth v. Howard, 42 Mass. App. Ct. 322, 326-327 (1997). Viewed in context, the discussion of the opioid crisis demonstrated the judge's desire to protect the public, not an effort to blame the defendant for the crisis as a whole. Moreover, nothing in these comments indicates that the judge's personal feelings or private beliefs came into play. Contrast Commonwealth v. Mills, 436 Mass. 387, 401 (2002) (finding error, in part, due to judge's discussion of his own personal religious experiences). Lastly, we note that the defendant failed to object to any of the judge's comments. Thus even assuming, arguendo, that the remarks[13] crossed the line into error, we do not believe they created a substantial risk of a miscarriage of justice.[14] See Commonwealth v. Belliveau, 76 Mass. App. Ct. 830, 836 (2010).
Judgments affirmed.
Order denying motion for new trial affirmed.

The drug-related convictions were possession of cocaine with intent to distribute, possession of oxycodone with intent to distribute, and the lesser included offense of possession of Suboxone.

The gun was missing the component that attaches the two pieces. Sergeant Walsh testified that shotguns are not "supposed to come with a pistol grip" and, as a result, he found it to be "crude and homemade."

With respect to the test-fire of the shotgun, Sergeant Walsh explained as follows: "[I]f you can hit the primer, that means the primer would ignite the gunpowder, which will create pressure because it's burning so rapidly, and it will push the projectiles down the barrel." After pulling the trigger, Walsh further confirmed that the primer was "spent" by locating a dimple in the primer created by the firing pin.

Sergeant Walsh narrowed his safety concern to the shotgun's potential recoil, as he testified that "[i]f I had the stock, I would have fired a live shot shell."

To constitute a "[s]hotgun" under G. L. c. 140, § 121, and hence within the meaning of G. L. c. 269, § 10(h ), the weapon must have "a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal to or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger." G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8.

The defendant also argues that under the language of G. L. c. 140, § 121, a weapon must be capable of discharging multiple times. He cites no authority to support this proposition. Moreover, the evidence, viewed in the light most favorable to the Commonwealth, would support a reasonable inference that the weapon was capable of discharging a bullet repeatedly. Contrast Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 3-4 (1997). Although Sergeant Walsh testified that firing the shotgun without a handle/stock could lead to an injury to his hand, there is nothing to suggest that this possibility rendered the shotgun incapable of discharging a bullet.

The proposed instruction would have notified the jury that the existence of the search warrant is not to be considered as evidence of any wrongdoing.

In the motion for new trial, the defendant argued that the jury's question evinced a misunderstanding of the law and showed that they considered "extrinsic evidence" of the search warrant as evidence of the defendant's guilt. He elaborated that "[t]he defendant requested no reference to the search warrant be made as well as a limiting instruction. Those requests were denied. Therefore ... justice was not accomplished."

The defendant argues that this issue was preserved such that our review should be for prejudicial error, as opposed to review of any error for a substantial risk of a miscarriage of justice. However, discerning no error, we need not dwell on this distinction. See Commonwealth v. Scesny, 472 Mass. 185, 194 n.20 (2015).

See Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969).

The first tip provided by the CI led to a controlled buy of narcotics from the target who was then arrested for distribution; the second tip culminated in a motor vehicle stop where the target was arrested for possession of narcotics.

The judge's remark regarding the births of babies with drugs in their system was better left unsaid. That notwithstanding, we discern no substantial risk of a miscarriage of justice stemming therefrom, for all of the reasons delineated herein.

Other points argued by the defendant that are not discussed in this decision have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954). Relatedly, we have read the defendant's additional brief brought pursuant to Commonwealth v. Moffett, 383 Mass. 201, 208-209 (1981), and conclude that the arguments contained therein are unavailing.